243 N.J. Super. 211 (1990)
578 A.2d 1269
ARLENE S. SIEGEL, PLAINTIFF,
v.
RICHARD L. SIEGEL, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Middlesex County.
April 23, 1990.
*212 Attorney for Plaintiff, Martin S. Goldin, Esq.
Attorney for Defendant, Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Jacqueline M. Printz, Esq., appearing.
BERMAN, J.S.C.
To fully comprehend the two novel questions before this Court, a brief background is indicated.
On January 31, 1990, this Court entered a Final Judgment of Divorce after three weeks of trial, dissolving the marriage, and resolving the myriad of economic issues.[1] Of present consequence are only two portions: the permanent alimony of $5,000.00 per month, and the equitable distribution payout to *213 the Plaintiff of $36,666.85 by March 1, 1990, and two installments of $125,000.00 by January 15, 1991 and January 15, 1992.
While no appeal was taken by either party within the time prescribed by the Rules, the Defendant filed a Voluntary Petition for Reorganization in the United States Bankruptcy Court for the District of New Jersey, the resultant effect being a stay of the Plaintiff's payout of the aforesaid $286,666.85. The Plaintiff moves for an elevation in the amount of her alimony contending that since the issues of alimony and equitable distribution are inexorably intertwined in the financial quilt, her loss of the payout dictates an increase in alimony to substitute for the loss of income that would have been generated by that payout.
The dual novelty raised by the Plaintiff is her application for this modification while the bankruptcy action is in progress, and her supplemental demand for counsel fees for her bankruptcy attorney.
Initially, one simply cannot lose sight of the fact that this Court's role as arbiter in the most emotionally taut sector of civil litigation is to be fair. The Defendant's petition, a model of deviant frivolity, discloses that his assets greatly exceed his liabilities. He delineates $1,453,150.00 of assets against $898,542.03 of liabilities  inclusive of the Plaintiff's equitable distribution of $286,666.85. Though the Defendant's creditors will have their fight in the bankruptcy tribunal, this Court cannot help but observe that the Defendant's assets have been dramatically understated, and his liabilities greatly exaggerated, if not in fact contrived. By way of example, his total liabilities include substantial amounts which he himself categorizes as "contingent", aside from other questionable liabilities which include unproven gambling losses. And while this Court cannot inject itself into those bankruptcy proceedings, it nevertheless is manifestly obvious that his filing produces the salutary effect of deferring at best, jeopardizing at worst, the Plaintiff's "nest egg" allowed to her from thirty years of marriage.
*214 While this State has yet to pass upon the vitality of an application for increasing alimony while the payor is in "reorganization" in the United States Bankruptcy Court, at least two other jurisdictions have dealt with this question.
In Eckert v. Eckert, 144 Wis.2d 770, 424 N.W.2d 759 (1988), the Plaintiff was awarded "maintenance" of $150.00 per week for eighteen months. That Judgment also required the Defendant to assume certain credit card indebtedness; but when he obtained a discharge of that obligation, causing the creditors to pursue her, it precipitated an application to increase the maintenance and delete the eighteen month termination date. The Trial Court did not increase the maintenance level, but vacated the eighteen month termination date. The Wisconsin Court of Appeals concluded that the maintenance modification did not "re-create" discharged debts; did not frustrate the "fresh start" objective of the bankruptcy code; and did not violate the supremacy clause of the United States Constitution. Id. 424 N.W.2d at 761.
A California Court of Appeals arrived at a similar conclusion, reducing the wife's support in light of her discharge in bankruptcy of debts, which then became the obligation of the husband. In re Marriage of Clements, 134 Cal. App.3d 737, 184 Cal. Rptr. 756 (1982).
Accordingly, every notion of fundamental fairness, in addition to the persuasive authority set forth in other jurisdictions, compels this Court to conclude that the Plaintiff has presented a classic Lepis[2] change of circumstances, dictating an additional increment to her monthly alimony since she must now exhaust one full month's alimony just to cover the retainer for her bankruptcy lawyer.
*215 The Plaintiff further argues that if she were seeking to enforce payment of equitable distribution, she would be entitled to counsel fees; a fortiori she argues that she should be entitled to counsel fees for being compelled to "protect" her property.
Both parties acknowledge that the issue is controlled by Rule 4:42-9(a)(1) which states:

In a family action, the court in its discretion may make an allowance both pendente lite and on final determination to be paid by any party successful in the action, on any claim for divorce, nullity, support, alimony, custody, visitation, equitable distribution, separate maintenance and enforcement of interspousal agreements relating to family type matters. Any pendente lite allowance may include a fee based upon an analysis of prospective services to be performed.
Though the bankruptcy action is concededly not a "family" action, the Court is mindful of the admonitions of the celebrated jurist Learned Hand, as well as that of the equally eminent Justice Nathan Jacobs. Judge Hand stated "... there is no surer way to misread a document than to read it literally". Guiseppi v. Walling, 144 F.2d 608, 624 (2d circuit 1944). Though this Court is construing a "Rule" as opposed to a "document", the Plaintiff contends that this proposition is apt and this Court should not stand on hypertechnicality when it is clearly outweighed by the equities of this case. Justice Jacobs has stated in Grober v. Kuhn, 47 N.J. 135, 155, 219 A.2d 601 (1966):
A rigid approach would perhaps have been understandable in the days immediately following constitutional revision when the abuses in Chancery were viewed as a continuing threat ... In the meantime, the rule should be administered with a proper measure of equitable flexibility and with full recognition that here, as elsewhere, "justice is the polestar". (emphasis supplied).
Enter now the Defendant  having committed adultery during the marriage, having bet and lost (allegedly) almost $300,000.00 to the Atlantic City blackjack tables, having forged the Plaintiff's signature to a tax return, having defrauded the Internal Revenue Service, having contemned this Court, having victimized the people who helped him most when he needed it most (i.e. one of the State's most prominent law firms and one of its *216 most widely respected trial attorneys who was entrusted with this matter), and being the subject now of a bench warrant for failure to pay any alimony for the month of April, 1990. Being mindful that one who comes in equity must come with clean hands, one might fairly conclude that to sanitize the Defendant's hands would require an amputation.
Notwithstanding, the Defendant directs the attention of the Court to Crowe v. DiGoia, 90 N.J. 126, 447 A.2d 173 (1982); 102 N.J. 50, 505 A.2d 591 (1986). There, the Supreme Court disallowed counsel fees in a "palimony" case  which had all the trappings of marriage except the perfuncory "I dos", and the post ceremony rice toss. Given that ruling, this Court cannot award counsel fees to cover the Plaintiff's fees in the bankruptcy proceeding, even though it can be fairly described as ancillary or derivative to the case sub judice. Simply stated, if this Court is precluded from awarding counsel fees in a "palimony" case, it cannot award counsel fees in a matter not even jurisdictionally allowable in the Superior Court of New Jersey! Judge Sylvia Pressler, author of the comments and annotations to the 1990 Rules of the Court has stated (at page 971): "Counsel fees are not awardable under this rule in a contract action for support brought by an unmarried cohabitor".
Thus, this Court, as to counsel fees must agree with the Defendant; but this ruling does not end the dialogue, it simply shifts it.[3]
In Crowe, Justice Stein has reminded us:
In a matrimonial action a wife who must sue to enforce her statutory right of support may be entitled to an award of counsel fees so that the support to which she is lawfully entitled is not substantially diluted by the legal expense incurred to enforce her right. Id. at 56, 505 A.2d 591. (emphasis supplied).
Accordingly, this Court concludes based upon the argument of counsel, pleadings and affidavits supplied to the Court, as follows: *217 1) the monthly alimony of $5,000.00 per month is increased to $6,000.00 per month effective May 1, 1990, it being understood that payment of the past due equitable distribution, non-payment of future installments, non-payment of the $5,000.00 retainer by the Plaintiff to her bankruptcy counsel (or payment of additional reasonable sums) undoubtedly represents some, but not all, facts which would justify modification of the $6,000.00 allotment  upwards as well as downwards.
2) counsel fees for prosecuting the motion, and defending the cross-motion for a decrease in alimony, are granted in the amount sought  $3,182.50; and are to be paid by June 6, 1990.
3) the application for counsel fees for bankruptcy counsel and a decrease in alimony are denied.
Counsel for the Plaintiff shall submit the order under the five day rule.
NOTES
[1] The Opinion was approved for publication. See 125 New Jersey Law Journal 937,996 (April 12, 1990).
[2] Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980); for a scholarly dissertation on modification motions, see Preparing and Defending the Support Modification Application, by John E. Finnerty, Volume X, Number 3, March/April (1990) New Jersey Family Lawyer.
[3] The issue as to counsel fees in a derivative bankruptcy proceeding must accordingly be left to the Supreme Court Family Practice Committee.