259 N.J. Super. 286 (1992)
612 A.2d 958
EILEEN BORZILLO, PLAINTIFF,
v.
ANTHONY BORZILLO, DEFENDANT.
Superior Court of New Jersey, Chancery Division Gloucester County.
Decided May 19, 1992.
*288 Adinolfi and Spevak, Robert J. Adinolfi, for Plaintiff.
Lario and Gleaner, Robert A. Gleaner, for Defendant.

OPINION
HERMAN, J.S.C.
This enforcement motion follows defendant's unsuccessful attempt to discharge alimony and maintenance obligations in bankruptcy. As part of her post-judgment application, Eileen Borzillo alleges defendant's ongoing bad faith and seeks attorney's fees for this motion and the bankruptcy proceeding.
In the context of this case, two emerging issues are worthy of a broader dialogue: How to define and apply the "bad faith" counsel fee test established in N.J.S.A. 2A:34-23 as amended (L. 1988 c. 153 § 3); and what protection, if any, can or should be given innocent litigants forced to defend their quality of economic life from unprincipled ex-spouses bent on using bankruptcy to diminish the divorce judgment or the property settlement agreement. See Siegel v. Siegel, 243 N.J. Super., 211, 578 A.2d 1269 (Ch. 1990).

*289 I.
After 23 years of marriage, Eileen Borzillo was granted a divorce on the grounds of extreme cruelty. As part of the judgment of divorce entered on May 17, 1990, Eileen Borzillo and Anthony Borzillo entered into a comprehensive property settlement agreement (PSA) in which she waived her interest in his business and IRA for the marital home. Child support was fixed at $210 per week.
As part of the PSA, plaintiff also waived permanent alimony and in exchange, defendant made the following promises: He would pay $100 per week alimony and the $650 monthly mortgage for two years; he would fully assume the $25,500 in credit card debts; he would maintain $100,000 of life insurance for the benefit of plaintiff and the unemancipated child; and he would pay $1250 in counsel fees.
In the original version of the PSA drafted by counsel for the defendant, the credit card obligations were characterized as alimony payments. However, prior to the final hearing, the original language was excised in ink, apparently as a result of opposing counsel's concern for the tax liability his client would incur if such payments were specifically characterized as alimony.[1]
By November, 1990, the defendant stopped paying the monthly mortgage. When plaintiff sought to enforce this and other *290 obligations via a motion filed February 4, 1991, returnable February 22, 1991, defendant countered by filing a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania in which plaintiff was the primary creditor. The specific relief defendant sought was to have four obligations he agreed to bear discharged: The two years of mortgage payments; the $100,000 of life insurance coverage; the $1250 payment of counsel fees; and the $25,500 credit card debt.
The filing of defendant's petition stayed plaintiff's enforcement action and compelled plaintiff to defend the PSA in the only forum that remained open to her, Bankruptcy Court, resulting in plaintiff incurring $7600 in additional post-judgment counsel fees.
After a full hearing, the Bankruptcy Judge found these obligations to be in the nature of support and alimony and, therefore, exempt from discharge by reason of § 523(a)(5) of the Bankruptcy Code. Borzillo v. Borzillo, 130 B.R. 438 (Bkrtcy.E.D.Pa. 1991). The Honorable David A. Scholl, United States Bankruptcy Judge, further found that defendant's actions were inconsistent with past practices relied upon by plaintiff and, generally, mired in bad faith. In regard to the defendant, Judge Scholl noted:
... as he promised, the husband remitted alimony, child support, payments for all household expenses, including the home mortgage, utilities, credit cards, and living expenses, to the wife from the time of the parties' separation throughout the finalization of the Agreement ... Borzillo v. Borzillo, 130 B.R. 438 at 441 (Bkrtcy.E.D.Pa. 1991).
... Regretfully, the husband unilaterally ceased making the mortgage payments in November, 1990, even though they were to be of only a limited duration. Also, these payments were obviously critical to the maintenance of the shelter, the most basic of necessities, to the wife and (son) S. This action on the part of husband causes us to question his good faith intention to fulfill his obligations to the wife which were nondischargeable ... Borzillo v. Borzillo, 130 B.R. 438 at 444 (Bkrtcy.E.D.Pa. 1991).
... Thus, the husband's unilateral conclusion that he need not comply with this requirement (to maintain life insurance) is yet another badge of his bad faith... Borzillo v. Borzillo, 130 B.R. 438 at 445 (Bkrtcy.E.D.Pa. 1991).
*291 After the Bankruptcy Court's adverse ruling, the defendant discharged his petition. Thereafter, plaintiff renewed her application before this court for enforcement and for payment of the counsel fees she incurred in the bankruptcy action. To date, all issues have been resolved by agreement, including the right of this court to impose post-judgment counsel fees related to this motion, save one: plaintiff's demand for reimbursement for counsel fees incurred in the bankruptcy proceeding.

II.
One standard the court may now factor to determine whether a counsel fee shall be awarded is the good or bad faith of either party. See N.J.S.A. 2A:34-23 as amended by L. 1988, c. 153 § 3, and Sheridan v. Sheridan, 247 N.J. Super. 552, 589 A.2d 1067 (Chan.Div. 1990). Kothari v. Kothari, 255 N.J. Super. 500, 605 A.2d 750 (App.Div. 1992). While prior court decisions did not seem to favor such a per se litmus test. Savoie v. Savoie, 245 N.J. Super. 1, 583 A.2d 762 (App.Div. 1990); Darmanin v. Darmanin, 224 N.J. Super. 427, 540 A.2d 913 (App.Div. 1988); and Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971), the march of superseding policy in this direction is unmistakable though the Legislature appears to have left the defining of such bad faith to the case by case process of judicial review. See N.J.S.A. 2A:15-59.1 (award of attorney fees for frivolous lawsuits), Iannone v. McHale, 245 N.J. Super. 17, 583 A.2d 770 (App.Div. 1990), Evans v. Prudential Property and Cas. Inc. Co., 233 N.J. Super. 652, 559 A.2d 888 (Law Div. 1989), Sjogren, Inc. v. Caterina Ins. Agency, 244 N.J. Super. 369, 582 A.2d 841 (Ch. 1990), N.J.S.A. 2A:34-23(a) (payment of counsel fees by defaulting party in actions to enforce and collect child support) and, of course, N.J.S.A. 2A:34-23 as amended, supra.
As a matter of policy, the awarding of counsel fees for a litigant's "bad faith" or for instituting frivolous litigation is *292 fundamentally new to our State.[2] In the few reported cases to date, our courts have looked to federal rule and case law for guidance. See Iannone v. McHale, supra, adopting "objective" standard, two-prong test of Fed.R.Civ.P. 11: To establish "bad faith" and right to fees, must show other party's improper motive and that litigation was unfounded in fact and law.
New Jersey's adoption of the federal "objective" test  "reasonableness under the circumstances" Kinee v. Abraham Lincoln Federal Sav. & Loan Ass'n., 365 F. Supp. 975 (E.D.Pa. 1973)  is predicated on our State's historical concern that the right of access to our courts should not be unduly infringed upon and that honest and creative advocacy should not be discouraged. Iannone v. McHale, supra, 245 N.J. Super. at p. 28, 583 A.2d 770.
Though current holdings have mainly dealt with a review of the frivolous litigation statute, the standard adopted and the rationale advanced are equally applicable to similar laws  such as N.J.S.A. 2A:34-23  which also permit "bad faith" as a criteria for counsel fee recovery.

III.
Bad faith is not simply bad judgment or negligence, rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. It is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will. Stath v. Williams [174 Ind. App. 369], 367 N.E.2d. 1120, at 1124 (1977) citing Vickers v. Motte, (1964), 109 Ga. App. 615, 137 S.E.2d 77.
"Bad faith" has also been defined as an intent to mislead or deceive another, or a neglect or refusal to fulfill some duty or contractual obligation not prompted by some honest mistake as to one's rights or duties, but by some interested or sinister motive. Black's Law Dictionary 127 (5th Ed. 1979); as acts by a losing party that have been vexatious, wanton or carved out *293 for oppressive reasons. Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Likewise, our federal courts have held that "`Bad faith' may be found not only in the actions that led to the lawsuit but in the conduct of the litigants" and, therefore, is not solely restricted to cases where the action is filed in bad faith. Roadway Express Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) and as quoting from Hall v. Cole, supra, 412 U.S. at 15, 93 S.Ct. at 1951, 36 L.Ed.2d at 713.
Given the unequivocal policy of this State to have its courts enforce judgments and agreements which fairly provide for the alimony/maintenance of the parties and the support of their children, Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980), Schlemm v. Schlemm, 31 N.J. 557, 158 A.2d 508 (1960), R. 1:10-5, R. 1:10-2, in matrimonial matters, bad faith conduct must be defined to include those actions specifically designed or calculated to evade, without just cause, the lawful payment of such alimony, maintenance and support.
Accordingly  absent a showing of proper motive, legal justification, honest mistake, or reasonable conduct under the circumstances of the case  the following shall be deemed to be acts of bad faith:
[*] An unwillingness to provide pendente lite support or contribute to the preservation of marital assets or reduction of marital debt commensurate with one's ability to pay;
[*] An unwillingness or intransigence during the litigation process to fairly negotiate an equitable distribution of property legally or beneficially acquired during the marriage or to pay alimony, or separate maintenance and child support commensurate with one's ability to pay;
[*] The intentional noncompliance with court-ordered obligations; and
[*] The intentional noncompliance with a voluntary agreement.
Evidence of bad faith can also be established, shown or corroborated by these acts as well:
[*] The misuse or abuse of process to evade court-ordered obligations or obligations arising out of voluntary agreement;
[*] To seek relief which one knows or should know that no reasonable argument could be advanced in fact or law in support thereof;

*294 [*] The intentional misrepresentation of facts or law designed or intended to discharge or unfairly or improperly limit equitable distribution or alimony, maintenance or support obligations; and
[*] Acts of a losing party that have been vexatious, wanton or carried out for oppressive reasons.
* * * * * * * *
In this case, the defendant sought bankruptcy, a constitutionally protected activity (U.S. Const. art. I, § 8). However, his misuse of that process in an attempt to gain a discharge which he knew or should have known was not available to him [11 U.S.C. § 523(a)(5)] speaks volumes as to his inappropriate motives and his bad faith conduct as determined again by the Bankruptcy Judge:
... This action on the part of husband causes us to question his good faith intention to fulfill his obligations to the wife which were nondischargeable .. . the husband's unilateral conclusion that he need not comply with this requirement (to maintain life insurance) is yet another badge of his bad faith. Borzillo v. Borzillo, 130 B.R. 438 at 444, 445 (Bkrtcy.E.D.Pa. 1991).
This court finds no reason to disturb or digress from this finding or any of Judge Scholl's factual findings.
At the time the property settlement agreement was executed, the defendant, Anthony Borzillo, was earning in excess of $51,000; by contrast, his wife had been a homemaker for 23 years and lacked viable, job market skills. As the Bankruptcy Court found, this was a classic, permanent alimony case. I agree.
As the facts disclose, the defendant was not satisfied with a bargain that relieved him of life-time alimony payments. Instead, he opted for what he thought would be a legal end-run around his obligations, notwithstanding "the obvious"  that such a gambit would jeopardize his child's housing and would torpedo any modicum of protection for which his wife had bargained away permanent alimony.
In this regard  in fact throughout these New Jersey proceedings  the defendant's conduct has been a continuous and defining illustration of what is meant by the term "bad faith."

*295 IV.
Counsel fees may be allowed in a matrimonial matter only as permitted by a rule of court, a statute or a contract. Enright v. Lubow, 202 N.J. Super. 58, 84, 493 A.2d 1288 (App. Div. 1985), certif. den. 104 N.J. 376, 517 A.2d 386 (1986). In this post-judgment proceeding, plaintiff's right to be so reimbursed for defendant's "bad faith" conduct is clearly proscribed, defined and admitted:
"Permanent or rehabilitative alimony, maintenance and child support; security; failure to obey order, sequestration or property; receiver; modification of orders; retainer and counsel fees; factors in determination of a mount of payments, equitable distribution of property
Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders, including, but not limited to, the creation of trusts or other security devices, to assure payment of reasonably foreseeable medical and educational expenses. Upon neglect or refusal to give such reasonable security, as shall be required, or upon default in complying with any such order, the court may award and issue process for the immediate sequestration of the personal estate, and the rents and profits of the real estate of the party so charged, and appoint a receiver thereof, and cause such personal estate and the rents and profits of such real estate, or so much thereof as shall be necessary, to be applied toward such alimony and maintenance as to the said court shall from time to time seem reasonable and just; or the performance of the said orders may be enforced by other ways according to the practice of the court. Orders so made may be revised and altered by the court from time to time as circumstances may require.
The court may order one party to pay a retainer on behalf of the other for expert and legal services when the respective financial circumstances of the parties make the award reasonable and just. In considering an application, the court shall review the financial capacity of each party to conduct the litigation and the criteria for award of counsel fees that are then pertinent as set forth by court rule. Whenever any other application is made to a court which includes an application for pendente lite or final award of counsel fees, the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." (emphasis added) See N.J.S.A. 2A:34-23 as amended by L. 1988, c. 153, § 3.

*296 "Counsel Fees
(a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except (1) In a family action, the court in its discretion may make an allowance both pendente lite and on final determination to be paid by any party to the action, including if deemed to be just any party successful in the action, on any claim for divorce, nullity, support, alimony, custody, visitation, equitable distribution, separate maintenance and enforcement of interspousal agreements relating to family type matters. Any pendente lite allowance may include a fee based upon an analysis of prospective services to be performed." R. 4:42-9(a)(1)
"(a)(8)

In all cases where counsel fees are permitted by statute." (emphasis added) R. 4:42-9(a)(8)
* * * * * * * *
In regard to plaintiff's request to be reimbursed for fees incurred in the bankruptcy action, this court can find no derivative authority or court decision that would allow innocent parties who are forced to defend support or alimony rights in a bankruptcy proceeding to be so compensated. Siegel v. Siegel, supra. However, it would be inappropriate to close this discussion without reference to an apparent process anomaly: If this court, with its concurrent jurisdiction to decide 523(a)(5) disputes, had heard the same facts and had made the same findings as the Bankruptcy Court in this matter, the plaintiff would have had a viable claim for the counsel fees now denied her.[3]
Fundamentally, all of this must appear to an innocent and deserving litigant to be more than just a little bit unfair. And she would be right to complain that such an anomaly is in need of some mending. But in our constitutional scheme, that mending must take place elsewhere.
Like all courts faced with policy gaps that deprive them of an ability to recompense a deserving litigant, this court  its power to award counsel fees derivative  must await the corrective *297 intervention of the State or Federal Legislature or the adoption of an appropriate federal court rule.[4] Accordingly, until our Legislature or another appropriate authority determines to vest this judiciary with powers akin to that now conferred under the Uniform Child Custody Jurisdiction Act (N.J.S.A. 2A:34-47(b), judges permitted to reimburse litigant's out-of-state costs and expenses related to New Jersey custody order enforcement), this court concludes that it is without jurisdiction to grant her request for counsel fees incurred in the bankruptcy action. See Siegel, supra.

V.
While this court currently lacks authority to directly grant plaintiff reimbursement for bankruptcy counsel, other equitable doctrines warrant examination in light of the defendant's conduct.
It is established policy in this State that the right to counsel in matrimonial matters is not unlike other categories of "necessaries." Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971). Likewise, it is axiomatic  as close to written in stone as a principle can get  that when a payee-spouse suffers a post-judgment decrease in income or increase in expenses which results in a quality of economic life below that enjoyed by that spouse during the marriage, the payee has demonstrated "changed circumstances" that may entitle her to an upward modification of alimony. Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980).

* * * * * * * *
Effective counsel in the complex world of bankruptcy was truly the linchpin to this plaintiff's survival, the ultimate in necessary services needed by her to survive the "no win, no *298 win" situation in which she was involuntarily placed: If she failed to defend against the defendant's bankruptcy, she and her son would lose the family home and any prospect of future family security in the event of the defendant's death; and so being driven to defend an action which she had no reason to foresee and certainly could not afford on her limited net salary of $215 she was required to incur a $7600 expense for legal services. Though these fees were by far the "lesser of two evils," this clearly altered her prior, modest lifestyle, a situation that will remain critical if this court fails to adjust the term and amount of her present alimony so she too can pay her debts.
In searching for precedent and parallels, the Siegel case offers the most guidance.
In Siegel, the final judgment provided the wife with permanent alimony of $5000 per month and an equitable distribution payout of $286,666.60. Thereafter, Mr. Siegel filed a petition in the U.S. Bankruptcy Court resulting in a stay of the equitable distribution payout. Mrs. Siegel countered with a request for an increase in the alimony payments to substitute for her loss of income via the payout; she also made application for her counsel fees in the bankruptcy proceeding which the court denied, ruling that it lacked jurisdiction. Siegel, supra, 243 N.J. Super. at 216, 578 A.2d 1269.
But astutely, Judge Berman found an open path to setting it right: Holding that the wife had "presented a classic Lepis change of circumstances," since she was now required to "exhaust one full month's alimony just to cover the retainer for her bankruptcy lawyer," Siegel, supra, at 214, 578 A.2d 1269, the court increased the monthly alimony payment from $5000 to $6000 (Id., at 217, 578 A.2d 1269).
The Siegel result was a just one reaffirming in this court's view the equitable maxim, "Equity suffers no right to be without a remedy." Crane v. Bielski, 15 N.J. 342, 349, 104 A.2d 651 (1954).
*299 In this regard so must Equity respond on behalf of Mrs. Borzillo and all like litigants who are forced into unexpected deprivation by a former spouse seeking unjust advantage. For to do less would, in effect, tarnish the very soul of Chancery's matrimonial mission: to protect to the extent possible, through appropriate orders of court, the right of every family to have suitable shelter, sufficient food, proper health care, the opportunity for a decent education and, indeed, the right to effective counsel to defend against the erosion of these fundamental necessities (in this regard, counsel being the quintessential necessary without whom a family's ability to preserve even a modest quality of economic life would falter).
Therefore, when, as in this case, the conduct of a litigant with ample income causes his family's lifestyle to diminish and places their access to these fundamental necessities at risk, the issue of what this defendant pays should be revisited and his alimony revised  for our courts have long held that it is money  in the form of adequate alimony and child support  that provides equilibrium to "changed circumstances" and the mortar and the means to assure each family's emotional and economic security, cf. Shanley v. Nuzzo, 160 N.J. Super. 436, 390 A.2d 158 (Juv. & Dom.Rel.Ct., 1978); Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980); Mahoney v. Mahoney, 91 N.J. 488, 453 A.2d 527 (1982), Avery v. Avery, 209 N.J. Super. 155, 507 A.2d 242 (App.Div., 1986), Sheridan v. Sheridan, 247 N.J. Super. 552, 589 A.2d 1067 (Chan.Div. 1990).

VI.
Paragraph VI(a) of the PSA was amended by plaintiff's counsel to specifically reject defendant's initial proposal that Mrs. Borzillo assume the tax liability attendant to defendant's debt reduction payments. In its final form, this paragraph read as follows:
*300 
As previously noted, Judge Scholl ruled that notwithstanding the ink-excised alimony language, the facts established the parties' clear intent to treat the $25,500 in debts as spousal maintenance and after a plenary hearing he affirmed the plaintiff's position that defendant had agreed to assume the taxes as well.
In real terms, the decision of the Bankruptcy Judge represented a court-ordered reformation of the PSA. It is a reformation, a finding, that is, indeed, res judicata, involving the same parties, the same facts and the same issues that are now before the court.[5]Warren Township v. Suffness, 225 N.J. Super. 399, 542 A.2d 931 (App.Div., 1988).
*301 While such a court-ordered reformation does not squarely fit the traditional, definitional mold  i.e.  reformation must be generally predicated on mutual mistake of fact or law Toth v. Vazquez, 8 N.J. Super. 289, 74 A.2d 331 (App.Div., 1950), certif. den. 7 N.J. 76, 80 A.2d 494 (1951), given the modern meaning of the term "to reform" that being "to improve by alteration or correction of error; to change for the better; to correct an evil or abuse; to amend; to rectify; to restore to a former good state," Webster's Third New International Dictionary, (1986), p. 1909, such a reformation most assuredly comports with the unambiguous consequences of res judicata as applied to the facts and procedural events of this case (for "reformation" as an evolving concept, see Brown v. Brown, 223 N.J. Super. 68, 537 A.2d 1343 (Chan.Div., 1987), a recent decision in which the court permitted a reformation specifically predicated on those "equity and fairness" principles currently utilized to modify or enforce property settlement agreements).

VII.
For the foregoing reasons, the court finds and holds as follows:
The defendant's bad faith conduct has caused the plaintiff to incur post-judgment counsel fees in this court which she can ill afford. Though defendant's gross income in 1991 was $39,000 or more, he is still the owner of a business that has afforded him substantial income for many years beyond that currently claimed, and he will have a far greater present and future ability to pay. Accordingly, judgment is entered against him in the sum of $3,000, which payment shall be made no later than December 31, 1992.
*302 Plaintiff's unexpected obligation to spend $7600 for counsel fees in the Bankruptcy Court represents a clear change of circumstances for which alimony modification is warranted.
This court also finds, based on the evidence before it, that the true intent of the parties in regard to the $25,500 in debts was to create an in-lieu-of-alimony obligation in which the defendant was to assume all tax obligations that the plaintiff would otherwise have incurred. Therefore, to the extent required, ¶ VI(a) of the PSA is hereby reformed to provide that defendant's payments shall conform with the order of the Bankruptcy Court declaring the defendant's debt to be nondischargeable, in essence in the nature of payments that one would make pursuant to § 71(b) and § 215 of the Internal Revenue Code.
Finally, it is the order of this court that the present alimony be modified as follows: That the term of the alimony shall be extended for one additional year at a weekly sum of $125, said increase to commence on June 1, 1992; further, in regard to the $25,500 debt, in the event that there remains any sums owed to third-party creditors, an additional sum of $125 per week shall be paid to the plaintiff in accordance with findings of this opinion until all such debt is paid in full, provided, however, that the plaintiff shall be required to utilize said sums for debt reductions. These weekly payments shall commence at the termination of defendant's alimony.
Plaintiff's counsel shall submit an order pursuant to the 5-day rule consistent with the findings and determinations of this court.
NOTES
[1] The court calls attention to the need for PSA drafting that does not dodge the tax consequences or inadvertently expose litigants to the consequences of bankruptcy discharge. In this matter those hurdles could have been overcome. For instance, the agreement could have been drafted so as to require the defendant to assume the tax consequences of the credit card payments made on behalf of plaintiff. Pursuant to § 71(b) of the Internal Revenue Code, parties may specify that payments made on behalf of a spouse under a divorce or separation agreement are not to be included in the gross income of the payee and not to be allowed as a deduction, under § 215, to the payor. Thus, the "debt and alimony" issue could have been avoided had the agreement been drafted so as to reflect that the payments were not to be included in plaintiff's gross income nor deductible to defendant.
[2] "Bad faith" is one of many criteria utilized in the Frivolous Litigation Statute as a basis for fee recovery. See N.J.S.A. 2A:15-59.1(b)(1).
[3] The issue of dischargeability of indebtedness under 11 U.S.C. § 523(a)(5) must be decided under federal bankruptcy law; state courts, however, have concurrent jurisdiction with the Bankruptcy Court to hear a § 523(a)(5) dispute.
[4] It would appear that such fee applications are not presently entertained in bankruptcy.
[5] "Res judicata is the principle which bars a party from relitigating a second time what was litigated and finally determined the first time. The general requirements for its invocation are `a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties and cause of action and thing sued for.' City of Hackensack v. Winner, 162 N.J. Super. 1, 27-28, 392 A.2d 187 (App.Div. 1978), modif. on other grounds 82 N.J. 1, 410 A.2d 1146 (1980)," Warren Township v. Suffness, 225 N.J. Super. 399, at 408, 542 A.2d 931 (App.Div. 1988).