266 N.J. Super. 56 (1993)
628 A.2d 784
JOHN A. PELLITTERI, PLAINTIFF-APPELLANT,
v.
DIANA PELLITTERI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1993.
Decided July 7, 1993.
*58 Before Judges KING, BRODY and LANDAU.
H. William Bressaw, attorney for appellant (Mr. Bressaw, on the brief).
Diana Pellitteri, respondent, filed a letter brief pro se.
The opinion of the court was delivered by KING, P.J.A.D.
The Family Part judge held that the appellant was automatically barred from seeking Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980), post-judgment "changed circumstances" relief from an alimony order because he had obtained a Chapter 7 bankruptcy discharge of his equitable distribution obligations. We disagree and remand. A Lepis "changed circumstances" decision must be based on all relevant circumstances. A debtor's legitimate recourse to federal Bankruptcy Court cannot perforce bar access to a state court for equitable relief without examination of all pertinent equitable considerations.

*59 I
Appellant John Pellitteri and respondent Diana Pellitteri married on November 9, 1963. They divorced on July 24, 1989 and executed a property settlement agreement. On February 20, 1992 appellant filed for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. § 727. On July 13, 1992 he was discharged from various debts, including the balance of equitable distribution owed to respondent under the property settlement agreement. The bankruptcy proceeding was unopposed by respondent. In her pro se brief on this appeal she claims that she could not afford counsel in the bankruptcy proceeding.
On June 2, 1992 appellant filed a motion to terminate alimony of $175 a week, vacate alimony arrears which had accumulated over the past nine months, and stop his obligation to maintain life insurance for respondent's benefit. She cross-moved seeking a judgment for the arrears, for the equitable distribution, a wage garnishment, increased alimony, and discovery. After oral argument on August 7, 1992 the judge denied appellant's motion because he had "unclean hands." The judge ordered appellant to continue paying alimony, reduced the alimony arrears dating to September 1, 1991 to a judgment of $8,575 and reduced "roof expenses" arrears to a judgment of $1,476.03 but refused to increase alimony or order payment of the equitable distribution obligation which had been discharged in bankruptcy.
At the time of the July 1989 divorce and contemporaneous property settlement agreement appellant, age 51, agreed to pay alimony of $175 a week commencing upon the sale of the marital home in Woodbridge. Up to the time of the sale, respondent continued to live in the home and appellant agreed to pay "roof expenses" (mortgage, taxes, utilities, telephone and insurance). If the marital home was sold for less than $139,000 appellant agreed to pay the difference between the net proceeds of the sale and $139,000. Basically respondent was guaranteed $139,000 from the liquidation and distribution of the marital assets as part of the property settlement. She was to transfer her interest in two *60 commercial properties which they owned jointly to appellant upon receipt of the $139,000.
Due to the very poor real estate market, the marital home did not sell until May 29, 1992 and the sale price of $154,900 netted only $69,500 for respondent, leaving an outstanding equitable distribution obligation of $69,500, the amount ultimately discharged in bankruptcy. This net was far below the amount the parties thought they would realize on the property when the agreement was negotiated in July 1989.
Appellant has been a real estate agent for ReMax Realty Center in Woodbridge. He claims that the "recent collapse" in the real estate market devastated him economically, greatly reducing his income from sales and rentals, and forced him into the Chapter 7 bankruptcy proceeding. He says that he now cannot afford to pay alimony and that respondent is supported, in part at least, by a male companion.
Respondent relates a different version, one of appellant's mismanagement of his affairs and his improvident dissipation of assets and misrepresentation of income. She denies receiving support from her companion, claims that she has only a very modest income of her own, that she purchased a new home in reliance on justifiable anticipation of the $69,500 which she never received, and that she could not afford to oppose the bankruptcy discharge. The schedule of secured and unsecured creditors listed debts which totalled about $457,000 including respondent's equitable distribution claim listed as $74,000. Of course, we cannot resolve these factual disputes on this appeal.

II
Appellant urges that the judge erred in barring his modification application as a matter of law because he had resorted to the bankruptcy court. The judge had these comments on the situation:
THE COURT: [I]sn't what happened here that your client agreed to pay alimony and agreed to pay a certain amount of money in equitable distribution, thereafter *61 he paid three payments of alimony.... And then went to bankruptcy court using the services of Mr. Smith [husband's bankruptcy attorney] and had the equitable distribution obligation discharged as a debt.
MR. BRESSAW [husband's counsel]: Yes.
THE COURT: Which we've all agreed he can do.
MR. BRESSAW: Yes.
THE COURT: Now, why should I be receptive to any position that he argues in this Court from an equity point of view? He agreed to be bound to pay his wife $69,500 in this Court. He then goes to another court which has appropriate jurisdiction and says, I'm not going to pay her. Doesn't that strike you as an inequitable position?
MR. BRESSAW: No, Your Honor.
THE COURT: Why?
MR. BRESSAW: First of all the federal bankruptcy law preempts the State in that regard as far as equitable distribution goes.
The judge agreed that appellant had a legal right to declare bankruptcy but emphasized that his equitable obligation somehow survived that proceeding.
I understand that he is in difficult economic circumstances, but he agreed to do something in this court and didn't do it availing himself of all of his legal rights. If this is a court of equity, why shouldn't I say, you are not entitled to any affirmative relief until you voluntarily pay the money that you discharged in bankruptcy court?
* * * * * * * *
Don't I have the right to say, you don't come before this court because a person who seeks equity must do equity, and by running to the federal court and taking advantage of your legal rights which he had every right to do, you didn't do equity in this case.
In retort to this proposition appellant argued that he had acted equitably and within his means and that respondent had already significantly benefitted from the settlement agreement, receiving the proceeds from the sale of the home, while he had been "wiped out" by market forces and compelled to declare insolvency and seek federal relief. The judge was not persuaded. In discussing Siegel v. Siegel, 243 N.J. Super. 211, 578 A.2d 1269 (Ch.Div. 1990), he stated:
In that case the husband agreed to pay a certain sum of money by way of equitable distribution and then went into bankruptcy court and sought to have that obligation discharged and then came into Judge Berman's court seeking affirmative relief, and Judge Berman addressing basic equity jurisdiction, decided the case standing for the proposition as this Court reads that opinion that because this *62 Court is a court of equity, this Court cannot sanction inequitable conduct and clean hands  unclean hands rather.
Under those circumstances, the application that is brought by the plaintiff for affirmative relief in this Court at this time is denied.
* * * * * * * *
I find that your client coming into a court of equity, making an agreement to pay his wife $69,500 and then going into a bankruptcy court to have that discharged constitutes unclean hands.
Unlike debts for alimony and support, equitable distribution debts are dischargeable in bankruptcy. 11 U.S.C.A. §§ 523(a)(5), 727(b); Singer v. Singer, 787 F.2d 1033, 1034 (6th Cir.1986); Calhoun v. Calhoun, 715 F.2d 1103, 1107 (6th Cir.1983); Stein v. Fellerman, 144 N.J. Super. 444, 449, 365 A.2d 1382 (App.Div. 1976). We agree with appellant that the judge's ruling improperly created an irrebuttable presumption against equitable relief in the Family Part because he had exercised his right to constitutionally-protected bankruptcy relief. U.S. Const. art. I, § 8.
In her pro se letter brief the respondent urges an affirmance, principally on her perception of the equitable grounds. She claims without support in the record before us, which was compiled solely by appellant's counsel, that
since my ex-husband has been able to declare bankruptcy and walk away from all his major debts, there have been a steady stream of Sheriff's Officers serving me with summonses and complaints to collect debts once jointly ours but from which I didn't benefit.
She contends that her husband knew that by declaring bankruptcy and "walking away from his obligations" he was imposing a burden on her which she could not bear. She also argues that prior to declaring bankruptcy, he purposely ran up his credit card bills, led an expensive lifestyle, and had "the luxury of living rent-free with his paramour who is financially independent." Further, in the certification attached to her cross-motion, she claims that what her husband characterized as an attempt to settle the matter prior to bankruptcy was actually a threat: "What he did was threaten me that he would file bankruptcy unless I waived my claims for $69,500.00 and alimony."
*63 In denying appellant a hearing on the merits, the judge relied on Siegel v. Siegel, supra, 243 N.J. Super. at 215-16, 578 A.2d 1269, for the proposition that a former spouse's attempt to discharge an equitable distribution obligation under a property settlement agreement through bankruptcy constitutes inequitable conduct and "unclean hands," precluding that spouse from seeking further affirmative relief in a state court of equity. In Siegel, the defendant ex-husband had filed for Chapter 11 reorganization relief under the Bankruptcy Code, 11 U.S.C.A. § 1121, shortly after an adverse judgment in the Family Part; this filing resulted in an automatic stay of an equitable distribution payout of $286,666.85. 243 N.J. Super. at 213, 578 A.2d 1269. The ex-wife moved for an increase in the amount of alimony to compensate for the loss of income from the payout. The Family Part judge found the ex-husband's petition for bankruptcy "a model of deviant frivolity" because his assets had been greatly understated and his liabilities greatly exaggerated in the petition. The judge held that the wife had "presented a classic Lepis change of circumstances, dictating an additional increment to her monthly alimony since she must now exhaust one full month's alimony just to cover the retainer for her bankruptcy lawyer." Id. at 214, 578 A.2d 1269 (footnote omitted).
The judge in Siegel denied the ex-wife's application for reimbursement of attorney's fees incurred as a result of her husband's petition for bankruptcy, recognizing that the bankruptcy proceeding, although ancillary to the underlying divorce judgment, did not constitute a "family action" under R. 4:42-9(a)(1). Id. at 215-16, 578 A.2d 1269. The judge in Siegel did acknowledge that the equities seemed to weigh heavily in the ex-wife's favor:
Enter now the Defendant [husband]  having committed adultery during the marriage, having bet and lost (allegedly) almost $300,000.00 to the Atlantic City blackjack tables, having forged the Plaintiff's signature to a tax return, having defrauded the Internal Revenue Service, having contemned this Court, having victimized the people who helped him most when he needed it most (i.e., one of the State's most prominent law firms and one of its most widely respected trial attorneys who was entrusted with this matter), and being the subject now of a bench warrant for failure to pay any alimony for the month of April, 1990. Being *64 mindful that one who comes in equity must come with clean hands, one might fairly conclude that to sanitize the Defendant's hands would require an amputation.
[Ibid.]
As a consequence, the judge adjusted the alimony according to the ex-wife's change in circumstances, i.e., the need to pay a bankruptcy lawyer, and also suggested that the husband's non-payment of either the past due equitable distribution or the future installments represented potential factors justifying further modification of the alimony allotment. Id. at 217, 578 A.2d 1269.
Nothing in Siegel suggests that a former spouse attempting to obtain affirmative relief from nondischargeable obligations under a property settlement agreement is automatically precluded from seeking such relief if he has previously succeeded in discharging his equitable distribution obligation through bankruptcy proceedings. The judge in Siegel found the ex-husband's act of filing a petition for bankruptcy a frivolous attempt to discharge his debts, justifying some increase in alimony payments to offset the ex-wife's costs of challenging the bankruptcy reorganization filing. Thus, where an ex-spouse uses bankruptcy in an attempt to diminish or defeat the divorce judgment or the property settlement, a court may be justified in granting the dependent ex-spouse additional relief to compensate for the necessity of additional legal expenses. See Borzillo v. Borzillo, 259 N.J. Super. 286, 298-99, 302, 612 A.2d 958 (Ch.Div. 1992).
In Borzillo, the Family Part judge recognized that while seeking bankruptcy relief was a constitutionally-protected activity, the defendant had abused the process in an attempt to gain a discharge which he knew or should have known was not available. Id. at 294, 612 A.2d 958. This, the judge said, "speaks volumes as to his inappropriate motives and bad faith conduct." Ibid. In Borzillo, however, defendant was unsuccessful in his attempt to discharge alimony and maintenance obligations in the Chapter 7 insolvency proceeding because this relief was clearly not allowed under 11 U.S.C.A. § 523(a)(5).
In both Siegel and Borzillo, the ex-husband's use of bankruptcy proceedings was either a frivolous or bad faith attempt to evade *65 his obligations. In each case, the dependent ex-wife had to expend resources on legal representation for the purpose of protecting her claims against potentially improper discharges. In both cases, the remedy provided by the Family Part judge was an increase in alimony to offset the additional legal expense incurred by the husband's perceived inappropriate conduct. In the case before us, appellant was successful in obtaining a discharge of his equitable distribution obligation. Indeed, he would most likely have obtained a discharge whether or not his wife could have afforded a lawyer to oppose the bankruptcy petition.
The doctrine of unclean hands embraces the principle that a court should not grant equitable relief to a party who is a wrongdoer with respect to the subject matter of the suit. Faustin v. Lewis, 85 N.J. 507, 511, 427 A.2d 1105 (1981). It calls for the exercise of careful and just discretion in denying remedies where a suitor is guilty of bad faith, fraud or unconscionable acts in the underlying transaction. Untermann v. Untermann, 19 N.J. 507, 517-18, 117 A.2d 599 (1955); Murray v. Lawson, 264 N.J. Super. 17, 37, 624 A.2d 3, 14 (App.Div. 1993). If circumstances calling for its application are disclosed, then a court of equity, as a court of conscience, is justified in refusing to listen, even if the complaint is well founded. Goodwin Motor Corp. v. Mercedes-Benz of North America, Inc., 172 N.J. Super. 263, 271, 411 A.2d 1144 (App.Div. 1980). However, the doctrine "does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct" of a complainant. Ibid. (quoting Neubeck v. Neubeck, 94 N.J. Eq. 167, 170, 119 A. 26 (E. & A. 1922)). The effect of the inequitable conduct on the total transaction determines whether the maxim of unclean hands shall apply. Untermann v. Untermann, supra, 19 N.J. at 518, 117 A.2d 599. The doctrine of "unclean hands" should not be used as punishment but to further the advancement of right and justice. Heritage Bank, N.A. v. Ruh, 191 N.J. Super. 53, 71-72, 465 A.2d 547 (Ch.Div. 1983).
An ex-spouse may, in good faith, declare bankruptcy and discharge an equitable distribution obligation. Stein v. Fellerman, *66 supra, 144 N.J. Super. at 449, 365 A.2d 1382. If a change in circumstances warrants, an ex-spouse may seek affirmative relief from alimony obligations pursuant to Lepis v. Lepis, supra, 83 N.J. at 145-46, 416 A.2d 45. To qualify as a proper exercise of discretion, a judge's finding of "unclean hands" must be based on more than the fact that the ex-spouse petitioned for or obtained bankruptcy relief. Indeed, in certain instances where there is a current income stream, bankruptcy relief may make payment of alimony easier, rather than harder. In order to foreclose a Lepis application by either party, there must be a finding that the circumstances were, in their totality, inequitable. A party may not be burdened or punished in State court solely for exercising a federally-conferred right. See Feldman v. Lederle Lab., 125 N.J. 117, 135, 592 A.2d 1176 (1991), cert. denied, ___ U.S. ___, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992).
Remanded for a hearing on the merits on the right to "changed circumstances" relief under Lepis.