675 A.2d 659

BARBARA FINKEL, PLAINTIFF–APPELLANT, v. STUART
I. FINKEL, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1996—Decided May 10, 1996.

Before Judges KING and LANDAU.

*Robert A. Vort* argued the cause for appellant.

*Ellen L. Browne* argued the cause for respondent (*Breitenstein & Browne*, attorneys; *Allan P. Browne*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal from a post-judgment order of the Chancery Division, Family Part, dated May 10, 1995, that denied a motion by plaintiff Barbara Finkel cast as a request for an increase in alimony equivalent to the counsel fees incurred by her in a related General Equity suit plus the fees incurred in connection with the motion.

Referring to the transcript of the General Equity proceeding, the Family Part judge concluded that any determination as to counsel fees should have been made in the General Equity Part, and that the request was not properly before the Family Part. Upon consideration of the reasons for the General Equity proceeding, we conclude that plaintiff's motion should have been granted. Our opinion leads to a remand for determination of the amount of fees and for direction as to the method of payment by defendant Stuart I. Finkel.

## I.

The parties were divorced in 1981 by judgment that incorporated a property settlement agreement. In March and April 1993, orders were entered modifying certain provisions of the original judgment. It suffices for purposes of this opinion to note that those orders directed defendant to pay substantial arrearages in alimony and child support, and modified but continued his obligations for alimony, child support, and college education for the children of the marriage.

By order of May 7, 1993,[1] the Family Part appointed a trustee of defendant's interest in the former matrimonial residence. The trustee was charged with conveying defendant's interest to plaintiff, who was to pay $180,000 for his interest, subject to credits for: (a) one-half of the outstanding first mortgage balance; (b) an obligation owed to Anchor Savings Bank including reimbursement to plaintiff for a payment made in connection therewith; and (c) the amount needed to satisfy all judgments (except plaintiff's) outstanding against defendant in order to ensure clear title. The balance remaining after these credits was to be held by the trustee together with certain other sums due defendant under the property settlement agreement. An opinion attached to the May 7 order recites:

> The trustee was appointed in the best interests of the child [sic] and to ensure that the defendant's college-cost obligation, in the future, be satisfied from a fund available for that purpose, especially in view of his actual income being less than that imputed to him; his lack of savings, and his threatened bankruptcy.

Under the order, the trustee was directed to "disburse money as necessary to satisfy to the extent possible defendant's obligation to provide for the college educations of his children. The trustee's fee shall be paid out of the proceeds in the trust, as shall be approved by the court."

Shortly after the May 7 order was entered, it was discovered that defendant had given a third mortgage on his interest in the

---

[1] This order was later modified on November 11, 1993.

matrimonial residence to the National Institute for Child Custody and Divorce Awareness (N.I.C.C.D.A.) prior to, but undisclosed in, his case information statement dated July 13, 1992. Defendant's case information statement was an exhibit before the court at the time of the May 7, 1993 order. That third mortgage was also made subordinate to amounts of income taxes owed by defendant, and to his personal counsel fees. After entry of the May 7 order, the Internal Revenue Service (I.R.S.) filed notices of tax lien against defendant.

By order to show cause in the Family Part, plaintiff immediately sought to file a supplemental complaint to set aside the N.I.C.C.D.A. mortgage as fraudulent, and to determine that the interest of the I.R.S. was subordinate to the title of the trustee. Consideration of this application was stayed, however, because defendant had by then filed for federal bankruptcy relief.

After the Bankruptcy Court's trustee abandoned defendant's interest in the marital home, plaintiff again renewed her application in the Family Part. The application was denied, and plaintiff was referred to the "Chancery Division," *i.e.*, the General Equity Part. Interestingly, plaintiff was awarded $1000 in counsel fees because of defendant's "attempts ... to avoid his financial responsibilities."

Plaintiff then filed her complaint in the General Equity Part seeking a declaration that the N.I.C.C.D.A. mortgage was fraudulent and that the I.R.S. liens were subordinate to the title of the constructive trustee appointed by the Family Part. N.I.C.C.D.A. agreed in short order to discharge its mortgage. Following further proceedings, the General Equity judge declared the I.R.S. lien on defendant's interest in the matrimonial home to be subordinate to the title of the constructive trustee and to plaintiff's title in that property. This was later clarified to free defendant's interest in the property from the I.R.S. lien in order to release the residence from its burden.

Plaintiff's counsel sought counsel fees in the General Equity Part for the work necessary to secure discharge of the mortgage

and to obtain a declaration that the trustee's title was paramount to the I.R.S. lien. The General Equity judge observed that N.I.C.C.D.A. promptly relinquished its mortgage once sued, and that a plenary hearing would still be necessary to determine if the mortgage was indeed fraudulent, a circumstance possibly warranting an award of attorney's fees. *See Jugan v. Friedman*, 275 *N.J.Super.* 556, 573–74, 646 *A.*2d 1112 (App.Div.), *certif. denied*, 138 *N.J.* 271, 649 *A.*2d 1291 (1994). In light of N.I.C.C.D.A's prompt capitulation, the judge questioned the economic feasibility of holding such a fraud hearing solely to determine if an attorney's fee was warranted. Plaintiff withdrew the request. As to the I.R.S. lien issue, the request for fees was denied as outside the scope of *R.* 4:42–9.

Plaintiff then moved in the Family Part to compel defendant to reimburse her by means of an increase in alimony for loss of income suffered because of legal fees she necessarily incurred in the General Equity suit. In support of the motion, plaintiff cited *Borzillo v. Borzillo*, 259 *N.J.Super.* 286, 612 *A.*2d 958 (Ch.Div. 1992), and *Siegel v. Siegel*, 243 *N.J.Super.* 211, 578 *A.*2d 1269 (Ch.Div.1990).

In each of these cases, the courts found they had no authority to award counsel fees incurred by the wife in connection with the husband's bankruptcy proceedings. *Siegel* relied upon equitable doctrines and *Crowe v. DeGioia*, 102 *N.J.* 50, 56, 505 *A.*2d 591 (1986), to find that the previous alimony calculation must be revised to avoid dilution of support by legal expenses incurred in enforcing the right to such support. *Siegel, supra*, 243 *N.J.Super.* at 216–17, 578 *A.*2d 1269. *Borzillo* held that the non-matrimonial legal fees were "necessaries," justifying reimbursement to compensate for the erosion in resources caused by conduct of the unjust spouse, which forced the blameless spouse to expend funds for legal fees outside the Family Part arena. *Borzillo, supra*, 259 *N.J.Super.* at 301, 612 *A.*2d 958.

Plaintiff's application was initially denied without prejudice to its renewal accompanied by additional evidence. It was renewed,

and opposed in part on the ground that The General Equity judge had previously denied counsel fees. The Family Part judge noted that the fraudulent conveyance dispute was resolved without trial and without a determination of fraud, and that the fee question was solely for the General Equity Part. As to what was referred to as the "quiet-title action" (presumably the I.R.S. lien question), he relied on the specific denial in General Equity, holding that the fee issue was not properly before the Family Part. He noted that if the General Equity judge had made a counsel-fee determination, such fees could have been designated by the Family Part as additional alimony.

The application for an increase in alimony, based upon the need to pay legal fees incurred in the General Equity suit, was denied.

## II.

Plaintiff observes that the General Equity denial of counsel fees was without prejudice because there was no express statement that it was with prejudice, and in light of her counsel's implied withdrawal of the fee application as to the I.R.S. lien services. Counsel had stated in oral argument that "I may have to go back to [the judge] ... in the Family action to exercise his discretion to give me a ruling." More to the point here, we think, is the fact that plaintiff had been sent by the Family Part to General Equity to litigate the fraudulent transfer and I.R.S. lien issues. The Family Part could have, and indeed probably should have (*see R.* 4:30A; *Tevis v. Tevis,* 79 *N.J.* 422, 434, 400 *A.*2d 1189 (1979); *Anzalone v. Anzalone Bros.,* 185 *N.J.Super.* 481, 487–88, 449 *A.*2d 1310 (App.Div.1982)), litigated these issues, which were intimately related to the matrimonial matter and to preservation of the trust created by the May 7, 1993 order for the benefit of the children of the marriage. Were these issues resolved in the Family Part, the counsel fee question would not have been rejected summarily by the General Equity Part as not allowed under *R.* 4:42–9, but might have been applied for as in a family action under *R.* 4:42–9(a)(1). Thus, we think plaintiff should not have been foreclosed from making the application.

The more critical question is whether there is authority that would permit the award of counsel fees to plaintiff, whether by way of additional alimony to offset the calls upon her income flow necessitated by defendant's wrongdoing, or otherwise.

The *Borzillo* and *Siegel* cases cited by plaintiff are not applicable to the present facts in any significant way. Nor is *Jugan v. Friedman, supra,* 275 *N.J.Super.* at 573, 646 *A.*2d 1112, in which we recognized that there is an exception to the rule that litigants ordinarily bear their own attorney's fees where a party's fraud occasions litigation with a third party. These authorities, while valid, have little impact here because the defendant's fraudulent conduct was alleged to have arisen in connection with the N.I.C.C.D.A. mortgage. No adjudication of fraud was made because of N.I.C.C.D.A.'s prompt concession on the mortgage. Moreover, counsel's services, though of unquestionable value to the trust in that respect,[2] did not consume a great many hours once the fraudulent transfer litigation was commenced.

We believe that the request for recovery of legal costs occasioned by defendant's wrongdoing, whether cast as additional alimony or otherwise, should have been entertained by the Family Part judge. We recognize, however, that most legal services for which fees were requested were generated by the I.R.S. lien problem. There has been no showing that the federal lien arose by reason of defendant's fraudulent or otherwise wrongful conduct toward plaintiff. In consequence, authorities such as *Jugan, Anzalone* and *Borzillo* furnish poor support for plaintiff's application, to the extent it arises from legal services attributable to lifting the I.R.S. lien.

Those services, and indeed all of counsel's services in the General Equity proceeding, were crucial in preserving an asset deemed critical enough by the Family Part judge to have ordered its proceeds to be held by the trustee for the use of the children

---

[2] The mortgage was for almost $30,000.

and their educational needs. The trustee herself might well have initiated the General Equity proceedings when the Family Part declined to entertain them.

Instead, plaintiff was compelled to protect the asset, which was dedicated to child support. In short, plaintiff's attorney's fees were incurred for services rendered in aid of the trust established under the May 7, 1993 order. Without those services, the trust would have been rendered substantially ineffective for its purpose. Viewed in this way, we have no hesitancy in finding that such fees, if approved for reasonableness, can and should be granted under R. 4:42–9(a)(1). We deem this preferable to depleting the trust fund in court for fees, as the trustee might have requested under R. 4:42–9(a)(2).

Accordingly we reverse the order under review, and remand for entry of an order assessing attorney's fees against defendant and in favor of plaintiff to the extent supported by R. 4:42–9(b) and deemed reasonable by the Family Part. The court shall make such provisions for payment as it deems reasonable.