**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1764-17T1
                      A-5345-17T1

TANYA KACAN,

      Plaintiff-Respondent,

v.

CLAUDIO BELUSIC,

      Defendant-Appellant.

_____

TANYA KACAN,

      Plaintiff-Respondent,

v.

CLAUDIO BELUSIC,
MILAN BELUSIC,
and MERANDA BELUSIC,

      Defendants-Appellants.

_____

          Argued (A-1764-17) and Submitted (A-5345-17)
          May 22, 2019 – Decided June 7, 2019

          Before Judges Reisner and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2237-11; and Chancery Division, Bergen County, Docket No. C-000303-17.

Anthony J. Cariddi argued the cause for appellant in A-1764-17 (Cariddi & Garcia, attorneys; Carol J. Garcia, on the briefs in A-1764-17 and A-5345-17).

Geri Landau Squire argued the cause for respondent in A-1764-17 (Cohn Lifland Pearlman Herrmann & Knopf, attorneys; Geri Landau Squire, of counsel and on the brief in A-1764-17; Andrew R. Macklin, of counsel and on the briefs in A-1764-17 and A-5345-17).

PER CURIAM

These are back-to-back appeals, which we have consolidated for purposes of this opinion. In A-1764-17, defendant Claudio Belusic appeals from an October 31, 2017 order awarding plaintiff Tanya Kacan judgments for enforcement of litigant's rights and counsel fees. In A-5345-17, defendants Milan and Meranda Belusic, Claudio's[1] parents, appeal from a July 27, 2018 judgment in favor of Tanya to repay funds Claudio fraudulently transferred to Milan and Meranda, and for counsel fees. We affirm.

---

[1] We utilize first names to distinguish Claudio from his parents because they share a common surname and utilize Tanya's first name for the sake of consistency. We intend no disrespect.

We take the following facts from the record. Following a nearly five-year marriage, Tanya and Claudio were divorced by way of a Final Judgment of Divorce (FJOD) entered in 2012, which incorporated a Divorce Settlement Agreement (DSA). One child was born of the marriage.

In pertinent part, the DSA recited that each party maintained a 401(k) Retirement Account and waived equitable distribution of these assets. The DSA required Claudio to turn over three rings to Tanya as a part of her equitable distribution. Because the parties agreed to share physical custody of their child, they agreed neither would be responsible for child support. However, Claudio would be responsible to pay half the cost of the child's medical insurance, and reasonable and necessary unreimbursed medical expenses.

Shortly after entry of the FJOD, the parties began prolonged post-judgment litigation due to Claudio's failure to comply with the terms of the DSA and numerous post-judgment orders enforcing it. Claudio violated the parenting time provisions of the DSA, and no longer enjoyed physical custody of the parties' child. An order was entered in November 2014, requiring him to pay child support and health insurance for the parties' daughter. The judge who signed the order concluded:

> [Claudio] has demonstrated that he chooses to do as he
> pleases and not as he is ordered or as the Court Rules

3

require. He has not produced . . . his financial information. He has not paid his [c]ourt [o]rdered obligations. He ha[s] elected to ignore the obligations that he agreed to when signing the DSA. [Tanya] has had to file this motion to again enforce her rights. . . . [Claudio] has previously been ordered to pay counsel fees on three separate occasions. [Claudio] paid his attorneys. . . . [Tanya] is entitled to . . . counsel fee[s] of $6000.

Another order was entered in May 2015, requiring Claudio to pay Tanya $9000 as reimbursement for the rings he failed to return pursuant to the DSA. The order also imposed monetary sanctions. The judge made the following findings:

> As for [Tanya]'s request to be reimbursed $11,751.99 for [Claudio] failing to return [her] rings as previously ordered . . . on January 25, 2013 and again . . . on November 17, 2014, the [c]ourt notes that . . . [Claudio] admits in his [c]ertification that he willfully defied both [c]ourt orders and sold the rings. . . .
>
> . . . Most compelling to the [c]ourt is that [Claudio] was twice ordered, by two different judges, to return the rings to [Tanya] or to pay her the fair market value. [Claudio] twice ignored the [c]ourt's orders and instead sold off the rings[.]

Additionally, Claudio was ordered to pay unreimbursed medical and daycare expenses for the parties' daughter. The judge also ordered him to pay the $6000 in attorney's fees previously ordered and $8154 in additional attorney's fees. As part of her enforcement motion, Tanya requested that Claudio be compelled to

liquidate his retirement account to satisfy his court-ordered obligations. The judge denied her request without prejudice, but noted the court would entertain sanctions "if [Claudio] violate[s] [the] order and continues to thumb his nose at the orders of this [c]ourt and its [j]udges[.]"

Claudio sought reconsideration of the order, which the court denied in an order dated September 18, 2015. Notably, this order required Claudio to liquidate his retirement account to pay his court-ordered obligations.

Claudio did not comply and instead filed a Chapter 7 Bankruptcy petition. His bankruptcy petition stated his 401(k) had a value of $105,000. The petition also named his mother as an unsecured creditor based on a "personal loan" in the amount of $45,000.

The bankruptcy discharge occurred in February 2016, and with the bankruptcy stay lifted, Tanya filed another enforcement motion. On June 24, 2016, the Family Part judge entered an order finding the counsel fees previously awarded to Tanya, the $9000 reimbursement, and $9200 accrual in additional sanctions for failure to pay the reimbursement constituted non-dischargeable domestic obligations. The order denied Tanya's request for Claudio to liquidate his retirement account "pending clarification from the Bankruptcy Trustee or the Bankruptcy Court that the requested relief is not subject to the automatic stay

A-1764-17T1

provisions in accordance with 11 U.S.C. §362(b)(2)(B)." On November 4, 2016, the judge signed an order which noted "[p]laintiff's counsel . . . provided the [c]ourt with correspondence and confirmation from . . . the Bankruptcy Trustee" and ordered Claudio to liquidate his 401(k) account to pay his outstanding financial obligations, which then amounted to $48,694.

Claudio failed to comply and the judge entered two subsequent orders, in March and April 2017, enforcing litigant's rights and awarding Tanya counsel fees for her efforts. The judge entered an order in June 2017, scheduling a plenary hearing to determine Claudio's ability to pay his obligations.

Discovery in advance of the plenary hearing revealed Claudio had liquidated $99,000 from his retirement account in February 2017, and transferred the funds to a bank account in his name. The following day, he transferred a total of $98,000, in separate equal amounts of $49,000, to Milan and Meranda.

Judge Terry Paul Bottinelli conducted a two-day plenary hearing and issued a written decision on October 31, 2017. The judge noted Claudio never appealed the September 18, 2015 or the November 4, 2016 orders, which required him to liquidate his 401(k) and pay his obligations. The judge also

noted Claudio had not appealed the June 24, 2016 order finding his unpaid court-ordered obligations were non-dischargeable.

At the hearing, the crux of Claudio's testimony was that the funds transferred to his parents were to repay a debt he owed them. Judge Bottinelli found Claudio's testimony lacked credibility. The judge noted he failed to produce any credible evidence to establish the validity of the alleged debt, and in any event, his debts had been discharged in the bankruptcy "nearly a year before his 'repayment' to his parents." The judge also noted Claudio "admitted to transferring money to his parents, which he knew to be in direct violation of [c]ourt [o]rder" and had fabricated the story of the debt owed to his parents to avoid satisfying his financial obligations to Tanya.

The judge concluded Tanya demonstrated by clear and convincing evidence that the money Milan and Meranda received constituted a fraudulent transfer under the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -34. The judge stated Tanya was "left to her own [devices] with regard to enforcement remedies which could be perfected by bringing another action against the defendant, his mother and father to [void] the transfer, enjoin the parents from dissipating the asset, appointment of a receiver or [for] any other relief . . . . [See] N.J.S.A. 25:2-29(a)."

7

Judge Bottinelli signed the October 31, 2017 order, which memorialized the sums Claudio owed Tanya, namely, $50,574.71, comprised of statutory post-judgment interest on $48,964 from February 7, 2017, and statutory post-judgment interest on $1880.71 from April 13, 2017, payable until the debt was satisfied. The judge also ordered Claudio to pay counsel fees of $17,666.92.[2]

Tanya subsequently filed a Chancery Division complaint naming Claudio, Milan, and Meranda as defendants to compel the return of the funds. A one-day plenary hearing occurred before Judge Robert P. Contillo.

Meranda testified and admitted she was aware Claudio was involved in a post-judgment matrimonial litigation, and that she and Milan knew Claudio's only asset after the divorce was his 401(k) account, both at the time of the divorce in 2012, and when they received the transfers in February 2017. She also admitted Claudio told them the source of the money was the 401(k). Claudio also testified and admitted the alleged loan from his parents was incurred prior to the bankruptcy and had been discharged.

Judge Contillo issued a written decision on July 18, 2018. He found Milan and Meranda were served with Claudio's bankruptcy petition and therefore knew

---

[2] The judge issued an amplification of his counsel fee ruling pursuant to Rule 2:5-1(b) on December 18, 2017.

A-1764-17T1

the alleged debt to them would be discharged. The judge found Milan and Meranda's testimony that they were unaware of the Family Part orders requiring Claudio to liquidate his 401(k) lacked credibility. Specifically, the judge stated:

> [T]hey were . . . aware that their son was embroiled in a bitter and protracted matrimonial action, including extensive post-judgment enforcement applications, and they were specifically aware that their son had no assets to speak of but for the 401K, which they believed was "tied up" in the matrimonial action, "not to be touched." They have no explanation as to how their impecunious son, who was dependent upon them for his expenses of daily living or for financing his matrimonial litigation, suddenly came up with $98,000 cash.

The judge concluded Milan and Meranda failed to prove they were "good faith transferees" pursuant to UFTA. He stated:

> I find that [Milan and Meranda] . . . are clearly insiders insofar as they are family members who were intimately familiar with their son's financial circumstances, including the acute financial distress occasioned by the ongoing matrimonial proceedings.
>
> The [c]ourt further determines that [Milan and Meranda] failed to prove that the transfers were made for reasonably equivalent value since the only thing owed to them at the time of the transfers was, at best, a total of [$8000.] N.J.S.A. 25:2-30(a). Since they were not good faith transferees beyond the [$8000, they] are not entitled to any further reduction in the amount of the judgment which will be entered against [them.] N.J.S.A. 25:2-30(d).

Accordingly, judgment will be entered against . . . Milan and Meranda . . . in favor of Tanya . . . in the amount of $83,615.74[.]

The judge also ordered Claudio to pay Tanya $22,029.61 in counsel fees.

These appeals followed.

I.

In A-1764-17, Claudio raises the following arguments:

I. [THE] LOWER COURT WAS WITHOUT AUTHORITY TO INVADE THE RETIREMENT ACCOUNT OF THE DEFENDANT N.J.S.A. 25:2-1(b) WITHOUT A FINDING THAT THE FEES AND SANCTIONS WERE WITHIN THE EXCEPTION FOR CHILD SUPPORT.

. . . .

II. THE LOWER COURT FAILED TO CONDUCT A HEARING IN A MANNER WHICH ALLOCATED THE PROPER BURDEN OF PROOF AS A MATTER OF LAW. THIS ERROR RESULTED IN FINDINGS OF FACT THAT DO NOT WARRANT THIS COURT'S DEFERENCE AS TO THE DETERMINATIONS OF CREDIBILITY.

. . . .

III. FAILURE TO FILE A PROPER COMPLAINT HAS RESULTED IN THE MISUSE OF COURT RESOURCES AND THE ABILITY OF DEFENDANT TO PRESENT ADEQUATE DEFENSES BORDERING ON DENIAL OF DUE PROCESS.

10

IV.   FEES AND SANCTIONS IMPOSED ARE A CLEAR ABUSE OF DISCRETION.

In A-5345-17, Milan and Meranda raise the following arguments:

I.   THE CHANCERY COURT FINDING THAT THE PRIOR RULING OF THE MATRIMONIAL COURT THAT A FRAUDULENT TRANSFER HAD OCCURRED BETWEEN THE NAMED DEFENDANTS WAS BINDING UNDER THE DOCTRINE OF RES JUDICATA CONSTITUTED A DENIAL OF DUE PROCESS.   RES JUDICATA/COLLATERAL ESTOPPEL IS INAPPLICABLE BECAUSE DEFENDANT-PARENTS HAD NOT BEEN JOINED AS INDISPENSABLE PARTIES IN THE PRIOR PROCEEDING.

>   A.   Denial of Motion to Vacate the Default against defendant-son was in error and constituted a continual denial of due process as to defendant-son as evidenced by the proceedings before the matrimonial court and demonstrated the Chancery Court's application of strict liability to all the defendant-parties.

II.   CHANCERY COURT COMMITTED REVERSIBLE ERROR BY HOLDING BOTH IN LAW AND FACT THAT DEFENDANT-PARENTS FAILED TO INTERVENE AND THEREBY CONDUCTED AN IMPERMISSIBLE BIFURCATED HEARING WHICH PERPETUATED THE ERROR WHICH OCCURRED BEFORE THE MATRIMONIAL COURT.

>   A.   Defendant-parents had no knowledge of the nature of the matter before the matrimonial court and therefore could not have been

11

reasonably expected to exercise their right to intervene. The Chancery Court was aware of this fact.

B. The defendant-parents by not being made a party in the matrimonial action were denied the proper burden of proof thereby resulting in an improper finding of law of insolvency.

III. REVERSIBLE ERROR WAS COMMITTED BY THE CHANCERY COURT BY ITS IMPOSITION OF STRICT LIABILITY DURING ITS CONSIDERATION OF THE AFFIRMATIVE DEFENSES. N.J.S.A. 25:2-30(a) UNDER THE UNIQUE CIRCUMSTANCES PRESENTED.

IV. IT WAS INCUMBENT UPON THE CHANCERY COURT TO REVIEW WHETHER OR NOT THE CLAIM BEING BROUGHT FORWARD PURSUANT TO THE UNIFORM FRAUDULENT TRANSFER [ACT] WAS VALID. N.J.S.A. 25:2-1(b).

The arguments raised by Claudio, Milan, and Meranda lack merit. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons set forth in Judge Botinelli's and Judge Contillo's opinions and add the following comments.

Claudio's challenges to Judge Botinelli's decision ignore the validity of the September 18, 2015, June 24, 2016, and November 4, 2016 orders. Claudio never appealed these orders and instead violated them, and then beseeched the trial judge for relief from his obligations, despite having unclean hands.

The doctrine of unclean hands embraces the principle that a court should not grant equitable relief

12

to a party who is a wrongdoer with respect to the subject matter of the suit. Faustin v. Lewis, 85 N.J. 507, 511 (1981). It calls for the exercise of careful and just discretion in denying remedies where a suitor is guilty of bad faith, fraud or unconscionable acts in the underlying transaction. Untermann v. Untermann, 19 N.J. 507, 517-18 (1955); Murray v. Lawson, 264 N.J. Super. 17, 37 (App. Div. 1993). If circumstances calling for its application are disclosed, then a court of equity, as a court of conscience, is justified in refusing to listen, even if the complaint is well founded. Goodwin Motor Corp. v. Mercedes-Benz of N. Am., Inc., 172 N.J. Super. 263, 271 (App. Div. 1980).

[Pellitteri v. Pellitteri, 266 N.J. Super. 56, 65 (App. Div. 1993).]

Claudio was afforded every opportunity to explain why the judge should not have enforced the several orders requiring him to pay Tanya. He had the ability to pay, but instead chose to make a fraudulent transfer to his parents in an attempt to impoverish himself. Claudio's unclean hands eliminated any credible argument that he could not meet his court-ordered obligations.

As for the arguments raised by Milan and Meranda, the record demonstrates Judge Contillo's decision was not exclusively predicated on the doctrine of res judicata. The judge made his own findings of facts and conclusions of law, and credibility findings, which are supported by the record and legally unassailable. Milan and Meranda were afforded due process and there were no procedural errors or mistaken applications of the law.

13

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14