**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5281-16T4
                        A-1900-17T4

JOSEPHINE PENZA,

    Plaintiff-Respondent,

v.

ROBERT A. PENZA,

    Defendant-Appellant.

_____

Argued May 8, 2019 – Decided June 10, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-0687-02.

Robert A. Penza, appellant, argued the cause pro se.

Robert J. Adinolfi argued the cause for respondent (Adinolfi, Molotsky, Burick & Falkenstein PA, attorneys; Julie Roberson Burick, of counsel and on the briefs; Kevin J. Murphy, on the brief).

PER CURIAM

These back-to-back appeals, consolidated for purposes of this opinion, arise out of a long-disputed and contentious matrimonial matter. We review the post-judgment orders of June 22, 2017 and November 3, 2017, specifically, the provision in the November order regarding the reimbursement of expenses plaintiff incurred on behalf of the parties' daughter, and the counsel fee award to plaintiff in both orders. While these appeals were pending, we issued our decision in two prior appeals. Penza v. Penza, Nos. A-2404-16, A-3562-16 (App. Div. June 1, 2018) (Penza II). Our prior determination affects the orders at issue here. Therefore, in light of our previous decision, and for the reasons that follow, we vacate and reverse the pertinent provisions of the orders and remand to the trial court for reconsideration.

The parties divorced in 2003 after eight years of marriage. Their only child was born in 1999. The parties remain contentious, resulting in protracted post-judgment motion practice and numerous appeals.

I.

In Penza II, we addressed issues of expenses for childcare, medical bills, tutoring, and extra-curricular activities. Plaintiff sought reimbursement in excess of $36,000 for the noted expenses and attorney's fees for her application. Because we determined plaintiff had not complied with her obligation to provide

documentation supporting her reimbursement requests, and the trial judge had not considered defendant's arguments presented in opposition to plaintiff's motion, we vacated the pertinent provisions of the prior orders and remanded to the trial court for reconsideration. Penza II, slip op. at 15-18.

However, before our opinion was issued, plaintiff filed a third motion to enforce the orders that were on appeal and for counsel fees. Following oral argument, the judge rendered an oral decision, granting the enforcement application and awarding plaintiff $10,000 in counsel fees. After stating she had "reviewed this quickly," the judge asked plaintiff's counsel for clarification on the fees pertaining to the specific motion, and inquired as to the firm's billing rates. She memorialized the fee award in paragraph sixteen of the June 22, 2017 order. Defendant now appeals from that fee award.

## II.

In August 2017, plaintiff filed another motion, seeking reimbursement of an additional $21,992.81 in child-related expenses and attorney's fees. Plaintiff included copies of canceled checks written to a childcare provider, Lee LaScala, from July through December 2016, and January through August 2017. Plaintiff requested defendant reimburse her $125 per week, the maximum required of him under a January 2014 order. For summer camp expenses, plaintiff submitted

3

copies of two canceled checks written to Penn AC Rowing Association totaling $6700. Plaintiff did not provide copies of any invoices, billing statements, or receipts for any of the childcare or camp expenses.

Plaintiff also requested defendant reimburse her eighty percent of the expenses incurred for tutoring costs, medical co-payments, National Honor Society dues, and the purchase of a class ring for their daughter. She provided canceled checks, but there were no billing statements, invoices, or receipts attached to otherwise explain the nature of these expenses.

Additionally, plaintiff sought reimbursement for miscellaneous private-school-related expenses, including lunch money, field trip money, SAT/ACT test fees, SAT workbooks, books for an English class, and a school banquet. In support of her request, she provided receipts and a canceled check for the field trip payment.

Finally, plaintiff sought reimbursement for eighty percent of their daughter's unpaid medical bills, some of which dated back to 2013. She attached past-due billing statements from more than fifteen health care providers, as well as five debt collection agencies. Only one billing statement reflected the receipt of a partial payment from an insurance provider. The remaining statements did not refer to a medical insurance policy.

A-5281-16T4

Plaintiff's counsel submitted a certification of services, seeking $9830 in counsel fees.

Defendant opposed the motion and filed a cross-motion. The cross-motion requested: 1) enforcement of the June 22, 2017 order, requiring plaintiff to provide a current and complete Case Information Statement (CIS) and copies of tax returns; 2) enforcement of the parties' final judgment of divorce (FJOD), requiring plaintiff to consult with defendant before incurring any significant child-related expenses; and 3) enforcement of four prior orders requiring plaintiff to pay attorney's fees to him.

Defendant asserted that plaintiff "does not consult" with him "about anything related to [their daughter]," and, more specifically, did not consult with him regarding summer camp or their daughter's medical expenses. He contended that plaintiff failed to use the medical insurance coverage he provided for their child. As in prior submissions, defendant questioned the childcare payments made to LaScala, since the parties' daughter was seventeen, and "a senior in high school . . . , who ha[d] been involved with activities after school, crew and/or cheerleading, all through high school."

In addressing plaintiff's request for attorney's fees, defendant contended that plaintiff "supplied no information as to her occupation, earnings or

investment holdings" to permit a determination on her ability to pay her own attorney's fees. The Appellate Division had affirmed the trial court's imputation of at least $700,000 in investment assets to her and her request was not made in good faith since she still owed him attorney's fees that were previously ordered. See Penza v. Penza, Nos. A-5538-13, A-1020-14, A-4572-14, A-5442-14 (App. Div. Feb. 28, 2017) (Penza I).

As to his cross-motion, defendant sought to enforce four prior orders: 1) an appellate order of April 20, 2017, requiring plaintiff to pay defendant $24,035 in attorney's fees "for costs of defending four separate appeals, all of which were denied on the merits"; 2) a trial court order entered June 16, 2014, requiring plaintiff to pay defendant $1030 in attorney's fees within thirty days; 3) a trial court order entered April 23, 2015, requiring plaintiff to pay defendant $200 in attorney's fees within fourteen days; and 4) a trial court order entered June 12, 2015, requiring plaintiff to pay defendant $400 in attorney's fees within thirty days.

Defendant also sought $7500 in reimbursement for attorney's fees that he was ordered to advance plaintiff under an August 20, 2012 order. He asserted that the trial court granted plaintiff's request for the advance to assist her in preparing for a plenary hearing concerning defendant's parenting time based on

plaintiff's counsel's representation that it would involve extensive discovery and expert depositions. It is undisputed that the anticipated plenary hearing never took place – despite the Appellate Division's February 27, 2012 order that it be conducted "immediately," Penza v. Penza, No. A-2491-10 (App. Div. Feb. 17, 2012) (slip op. at 18), and its subsequent order five years later, on February 28, 2017, that the plenary hearing be held within sixty days. Penza I, slip op. at 2.

On November 3, 2017, the court granted plaintiff's motion and ordered, in pertinent part, in paragraph six, that defendant reimburse plaintiff $21,992.81 in child-related expenses, the full amount requested. In her oral decision, the trial judge neither referred to having reviewed plaintiff's documentation or noted the lack thereof; nor did she mention defendant's opposition to the reimbursement requests, particularly the lack of information regarding childcare expenses for a seventeen-year-old high school senior and the failure to use defendant's health insurance for medical care.

In paragraph four of its November order, the court awarded plaintiff an additional $10,000 in attorney's fees, more than the $9830 requested. There was no reasoning given for the fees nor any analysis as required under Rule 5:3-5(c). Defendant now appeals from these two provisions of the order.

III.

We begin with the $10,000 counsel fee award to plaintiff in the June 2017 order. Defendant contends the judge failed to make any Rule 5:3-5(c) findings and plaintiff failed to provide any information regarding her financial circumstances. As we conclude the trial judge awarded counsel fees without making the required findings, we are constrained to vacate that portion of the order and remand.

In matrimonial matters, an award of attorney's fees is discretionary. Slutsky v. Slutsky, 451 N.J. Super. 332, 365 (App. Div. 2017) (citing Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). Pursuant to Rule 4:42-9(b) and Rule 5:3-5(d), counsel must submit an affidavit of services that addresses the factors listed in RPC 1.5(a), and itemizes disbursements for which reimbursement is sought.

When reviewing a fee application, a family court judge must consider the nine factors under Rule 5:3-5(c). This includes a determination as to "the financial circumstances of the parties," "the ability . . . to pay their own fees or to contribute to the fees of the other party," and "the reasonableness and good faith of the positions advanced by the parties." R. 5:3-5(c)(1) to (3). Bad faith conduct in the matrimonial context can include "intentional noncompliance with

8

court-ordered obligations." Borzillo v. Borzillo, 259 N.J. Super. 286, 293 (Ch. Div. 1992). However, we have stated that a party has not acted in bad faith in pursuing a legal position that is reasonably supported but rejected by the court. Slutsky, 451 N.J. Super. at 367.

After consideration of all relevant factors, if the court decides to award fees, it must then "determine the 'lodestar,' which equals the number of hours reasonably expended multiplied by a reasonable hourly rate." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (citing Yueh v. Yueh, 329 N.J. Super. 447, 464 (App. Div. 2000)). Specifically, the court must exclude any hours billed that are "not reasonably expended" and calculate the reasonable hourly rate as per community standards. Yueh, 329 N.J. Super at 465 (quoting Rendine v. Pantzer, 141 N.J. 292, 335 (1995)). "Where this analytical framework is followed and the judge makes appropriate findings of fact, a fee award is accorded substantial deference and will be disturbed only in the clearest case of abuse of discretion." Id. at 466 (citation omitted).

Here, the court found there was "clearly bad faith" because defendant had failed to comply with two prior orders. Upon "quickly" reviewing plaintiff's certification of services, which sought $14,514.50 in fees, and asking plaintiff's counsel to confirm the firm's hourly rates, the court awarded $10,000. The court

9

did not explain how it arrived at the $10,000 figure, other than that it declined to award "a whole seven hours of preparation for court."

Apart from bad faith, the court did not make findings regarding any other factors enumerated in Rule 5:3-5(c), including the parties' financial circumstances or ability to pay attorney's fees, nor any findings pertaining to the calculation of the lodestar required under J.E.V., 426 N.J. Super. at 493, and Yueh, 329 N.J. Super at 465-66. Although plaintiff was ordered by both the trial court and this court to provide her CIS and financial information, she had not done so.

Because the court did not consider the required Rule 5:3-5(c) factors or calculate the lodestar, we remand the counsel fee award for reconsideration. In its limited findings, it appears the award was premised on defendant's bad faith failure to comply with prior orders. In Penza II, we vacated and reversed both of those orders. Slip op. at 15-18. Our reasoning for the reversal of those prior orders must also be considered by the trial court in its determination of a potential fee award on remand.

## IV.

In paragraph six of the November 3, 2017 order, defendant was ordered to reimburse plaintiff for the full amount of requested child-related expenses.

He complied with this provision and paid plaintiff $21,992.81 on November 21. Following our order in Penza II, defendant contends he only owes $1162 in reimbursement to plaintiff for their daughter's school supplies, books, uniforms and school lunch money. He seeks a return of the excess monies paid, not a credit.

Here, as in Penza II, the court did not make findings of fact or conclusions of law as required under Rule 1:7-4(a). As in her prior requests for reimbursement, plaintiff failed to support her application with the required documentation. Although plaintiff provided some canceled checks for childcare, tutoring, summer camp, and several medical expenses, she also sought thousands of dollars in reimbursement for unpaid overdue medical bills. Her proofs regarding those expenses consisted of billing statements from various medical providers and collections agencies – not canceled checks. Without making any findings pertaining to the required documents, the court granted plaintiff's request for reimbursement in full.

We noted in Penza II that the FJOD required the parties to "consult with each other" regarding activities such as summer camp that would require defendant "to make a significant monetary contribution." As in his opposition to plaintiff's prior requests for reimbursement of expenses, defendant continued

11

to assert that plaintiff had never consulted with him. The court did not make any findings as to whether plaintiff had consulted with defendant prior to incurring almost $7000 in expenses for their daughter's summer camp, but instead ordered defendant to reimburse plaintiff for his eighty percent share of the summer camp bill.

Similarly, a prior order regarding the child's tutoring expenses required "consultation before the expense is incurred and plaintiff must provide invoices or some written note from the tutor." Although plaintiff did not supply any invoices or notes in connection with her request for reimbursement of tutoring expenses, the court ordered defendant to reimburse plaintiff for his eighty percent share of the tutoring expenses. The judge did not make any findings as to whether plaintiff consulted with defendant before incurring the expenses or provided a note from the tutor. In Penza II, we noted that plaintiff "conceded she did not consult with defendant prior to incurring" the tutoring expenses and she also "did not properly document tutoring costs." Slip op. at 14. There is no evidence to the contrary presented here.

Like the trial court orders at issue in Penza II, the judge here did not consider defendant's arguments in opposition to plaintiff's enforcement motion. She neither addressed his claim that, although he supplied medical insurance for

the parties' daughter, plaintiff did not use it, and therefore, incurred unnecessary bills; nor did she address defendant's claim that the purported work-related childcare expenses were unnecessary because plaintiff refused to divulge her employment status, and the daughter was sixteen or seventeen years old and frequently participated in extracurricular activities after school.

We have previously addressed the legitimacy of the childcare expenses. Months before the November 3, 2017 order, we wrote: "We are not clear as to the reason the child would require such substantial child care costs given her age." Penza I, slip op. at 29-30. In Penza II, we stated:

> [T]he court never considered defendant's arguments presented in opposition to plaintiff's application. Defendant's arguments concerning childcare expenses for his high-school-aged daughter certainly warranted consideration. He argued there was no information plaintiff was working, what services were provided by the alleged caregiver, or the hourly wage. Instead, defendant was charged the full amount allowed in a prior order.
>
> [Slip op. at 12.]

We also note, as before, that plaintiff sought duplicate reimbursement from defendant on more than one occasion. The court awarded plaintiff the full amount she sought, without reducing the amount to account for the duplicates.

A-5281-16T4

Because the judge did not assess the adequacy of plaintiff's proofs, did not consider defendant's opposition, and failed to provide factual findings and conclusions of law, we reverse and vacate paragraph six of the November 3, 2017 order.[1]  On remand, the trial court must consider whether plaintiff complied with her responsibilities when assessing her request for reimbursement under all categories of her application, as well as defendant's opposition to the motion, and make the required factual findings and conclusions of law.

V.

Defendant also appeals from paragraph four of the November 2017 order, awarding plaintiff an additional $10,000 in attorney's fees, more than the requested amount.

Because we reverse and remand the reimbursement issues, the related counsel fee award must be vacated and reconsidered.  See, e.g., Barr v. Barr, 418 N.J. Super. 18, 47 (App. Div. 2011) (reversing trial court's ruling on a post-judgment matrimonial motion and "instruct[ing] the trial court to review its

---

[1] Defendant urges this court to exercise original jurisdiction under Rule 2:10-5 and determine the amount plaintiff is obligated to return to him from the $21,992.81 he has paid pursuant to court order.  We decline to do so as questions of fact remain outstanding and the record is inadequate to resolve them.  See Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013).

counsel fee award in light of the determinations on remand, as an award of counsel fees may abide that event").

We also reverse the award because the court did not consider any of the Rule 5:3-5(c) factors or calculate the lodestar. It did not review plaintiff's financial circumstances or assess her ability to pay her own fees. The court did not reference counsel's certification, their hourly rates, or the hours reasonably expended. The lack of "appropriate findings of fact" warrants a remand "for a searching reconsideration of the fee award." Yueh, 329 N.J. Super. at 466, 469.

In the trial court's oral ruling, she determined that defendant owed plaintiff a total of $24,000 in counsel fees. The judge then offset that amount with the $24,000 plaintiff owed defendant for counsel fees, and concluded that neither party owed the other. On remand, these conclusions must also be addressed.

During the course of this litigation, plaintiff has been ordered on four occasions to pay counsel fees to defendant. The trial court issued three of these orders, totaling $1630, all of which were affirmed on appeal. This court awarded defendant $24,035 in counsel fees in 2017 arising from plaintiff's four unsuccessful appeals. Plaintiff has not complied with any of these orders.

Additionally, in 2012, as the parties battled over parenting time issues, and a plenary hearing was ordered, plaintiff's counsel requested an advance of

$35,000 in counsel fees. In his oral decision of August 20, 2012, the trial judge stated:

> Next, as to the advance of attorney's fees for the plenary hearing. . . . [P]laintiff seeks an advance of $35,000 and argues that given the complex history of this case, the requirement for discovery and the potential need for expert depositions, that this is a reasonable request and is required to permit . . . plaintiff to meaningfully participate and prepare for the plenary hearing.

The judge concluded that "[t]he request exceeds what's reasonably necessary, given the nature of the proceeding, which will be a plenary hearing involving only parenting time, not a change of custody." Significantly, the judge ordered plaintiff to provide defendant with a completed CIS, and several years of tax returns and W2s within fourteen days. Upon receipt of the ordered documents, defendant was directed to "advance to the plaintiff, without prejudice, $7500." Although plaintiff never produced the documents, defendant was ordered by a different judge a few months later to advance the $7500 fee, again without prejudice.[2] Defendant complied with that order and paid plaintiff's counsel $7500 on February 11, 2013.

---

[2] This order was issued on January 18, 2013. The order also denied defendant's motion for reconsideration regarding the advance fee award.

Despite multiple orders, from the trial court and this court, directing a plenary hearing, it never took place. The parties' daughter is now over eighteen, rendering the parenting time issue moot. As a result, in his cross-motion heard November 3, 2017, defendant requested the return of the "advanced" counsel fees. The judge did not address the request.

The parties each blame the other for the never-completed plenary hearing. Plaintiff's counsel disputes that the $7500 was an "advance" only earmarked for a plenary hearing on parenting time issues. We are unconvinced. The record is clear, that in 2012, plaintiff's counsel requested an advance of fees specifically for the preparation and costs of a hearing.[3] Because of the order's specificity regarding the reason for this fee award, we instruct the remand judge to consider defendant's contention that plaintiff's counsel must return the $7500 advance. This is in addition to the other trial and appellate fee awards assessed against plaintiff.

In summary, in light of our prior rulings, including Penza II, the trial judge, on remand, is to reconsider the fee awards of $10,000 in the June and November 2017 orders. Upon the court's determination of what amount, if any,

---

[3] In a subsequent letter in October 2012, plaintiff's counsel requested the judge reconsider the advance fees of $7500 ordered for a plenary hearing and award a higher amount.

defendant owes to plaintiff under those two orders, the judge must then undertake a complete and conclusory analysis of the respective outstanding fee awards owed by both parties. The judge will determine if an offset is appropriate and set a firm date for payment, including sanctions for non-payment.

The judge shall also consider the amount defendant owes to plaintiff, if anything, for child-related expenses. If it is determined defendant has overpaid plaintiff, she shall return the overpaid monies to him by a date certain. Any monies overpaid by defendant shall be returned to defendant regardless of any pending requests for reimbursement of expenses and prior to the adjudication of future requests. Any overpayment shall not be credited against any monies plaintiff alleges defendant owes to her. As the parties have advised, there are ongoing applications for reimbursement of child-related expenses. Our opinion today, and that of Penza II, should provide guidance to the parties and counsel as to a resolution of those issues.

Paragraph sixteen of the June 22, 2017 order and paragraph four of the November 3, 2017 order are vacated. Paragraph six of the November 3, 2017 order is reversed. The matter is remanded to the trial court for further proceedings consistent with the above. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5281-16T4