**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3851-18T1

MICHAEL PICKHOLZ,

    Plaintiff-Appellant,

v.

JESSICA PICKHOLZ,

    Defendant-Respondent.

_____

Submitted April 27, 2020 – Decided July 22, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1301-18.

The Law Offices of Lawrence H. Kleiner, LLC, attorneys for appellant (Lawrence H. Kleiner, of counsel and on the briefs).

Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys for respondent (Brian C. Martel and Lily J. D'Olimpio, on the brief).

PER CURIAM

Plaintiff Michael Pickholz appeals from the Family Part's March 28, 2019 order granting defendant Jessica Pickholz counsel fees in the amount of $14,350.85 relative to defendant's efforts to secure payment of funds plaintiff was obligated to pay her under an agreement the parties entered into before being divorced on December 3, 2018. The Family Part judge entered the award after reviewing the considerations delineated in Rule 4:42-9(b) and Rule 5:3-5(c) and concluding that plaintiff acted in bad faith when he failed to make the required payment. On appeal, plaintiff argues that the award was improper, excessive, and violated his rights under the Eighth Amendment to United States Constitution. We affirm substantially for the reasons expressed by the Family Part judge in his written decision that accompanied the order under appeal.

The parties were married on June 15, 2002. They had two daughters, one born in 2003 and the other in 2007. In December 2017, plaintiff filed for divorce.

On September 14, 2018, the parties entered into an agreement, with the advice of counsel, which they identified as the "Essential Terms of Settlement Agreement" (Agreement) that addressed all of the issues arising from their divorce. The Agreement was signed by the parties and their counsel.

The Agreement stated that plaintiff would pay defendant a total of $104,000 for all claims relating to equitable distribution by making a $10,000 payment by September 17, 2018, with the remaining amount to be paid by October 1, 2018. Notably, there were no conditions to the payments being made when due. Additionally, in the Agreement, the parties waived alimony and addressed a pending lawsuit pertaining to the parties' mutually owned business.

As to custody and parenting time, the Agreement stated that the parties would have joint legal custody, but all other related issues would be subject to a best interest evaluation to be prepared in the future by a psychologist they had selected. The Agreement also required plaintiff to pay sixty percent of the children's health insurance, uncovered medical expenses, medical copayments, and extracurricular activities, and to pay monthly child support beginning October 1, 2018.

In addition, the Agreement provided that the parties would be responsible for their own counsel fees and each party was responsible for their own debt. It also addressed the parties' tax returns and the division of their business.

Plaintiff made the first payment of $10,000 on September 17, 2018. Thereafter, the parties' counsel entered into an unnecessarily contumacious dispute about the preparation of a marital settlement agreement (MSA) that was

3

to be made part of the parties' anticipated Final Judgment of Divorce (FJOD). According to a September 26, 2018 email from plaintiff's counsel, defense counsel was to have drafted the proposed MSA, the receipt of which was a condition precedent to plaintiff making the second payment due under the Agreement. Defense counsel responded and stated that he did "not work for [plaintiff and did not] operate [his] practice around [plaintiff's] time frame." He further stated that he would "draft a proposed agreement when [he got] the chance to draft one" or plaintiff's counsel could draft one himself. Either way, defense counsel stated that the proposed MSA could not "be signed and finalized until custody and parenting time [was] resolved." The next day, plaintiff's counsel drafted a proposed MSA and sent it to defense counsel.

Plaintiff failed to make the $94,000 payment and his child support payment that were both due under the Agreement on October 1, 2018. In response to defense counsel's inquiry about the payments, plaintiff's counsel stated "that [p]laintiff's position was that he would not comply with the remainder of [the] Agreement until [the parties] entered into a full [MSA]." However, ten days later, on October 11, 2018, plaintiff made his child support payment.

A-3851-18T1

When the second payment for equitable distribution was not made, defendant filed a motion to compel payment of the remaining $94,000 and to require future child support payments through wage garnishment. According to defendant's supporting certification, plaintiff acted in bad faith when he withheld the payment. Additionally, she stated that since plaintiff was "in a superior economic position [than defendant,] . . . [she requested] that [p]laintiff be ordered to reimburse [her] for the counsel fees [she] incurred in connection with [this] . . . application." Defendant's application was also supported by her counsel's certification of services.

Prior to plaintiff filing any opposition to the motion, the Family Part judge conducted a case management conference to finalize the MSA on a day that had been scheduled for the final hearing. During the conference, the judge addressed the pending motion. The judge observed that plaintiff "didn't follow the essential terms, and [defendant] didn't follow exactly the essential terms" of the Agreement. He also questioned whether the Agreement could be enforced since it was not part of a court order or judgment. However, the judge suggested that it would be in plaintiff's interest to make the outstanding payment tomorrow, and that he "may not be done with the penalty or the exposure that [plaintiff was going to] risk when [he was] done with this case."

Shortly after the conference, plaintiff made a $10,000 payment towards the outstanding $94,000. Plaintiff's counsel advised defense counsel about the payment and asked when plaintiff could expect a response to the proposed MSA. On October 30, 2018, defense counsel asked plaintiff's counsel for a differently formatted version of the proposed MSA, which plaintiff's counsel forwarded to him. On November 8, 2018, plaintiff's counsel asked for an update on the proposed MSA, to which defense counsel responded by stating that they were "in the process of revising it."

On November 20, 2018, plaintiff filed opposition and a cross motion to plaintiff's motion for counsel fees, seeking the denial of defendant's motion, the entry of a deadline for defendant to reply to the proposed MSA, and an award of counsel fees. In his supporting certification, plaintiff argued that the Agreement was not a settlement agreement and that defendant's "arguments show[ed] her wanton disregard for [the c]ourt [o]rders and continued bad faith in pursuit of her personal vendetta against [him]." He stated that defendant and her counsel are the ones that purposely prolonged this process. According to plaintiff, after the Agreement was completed, defense counsel was supposed to draft an MSA by October 1, 2018 but he failed to do so. Since efforts to contact defense counsel were unsuccessful or ignored, plaintiff's counsel drafted an

MSA. Contrary to defendant's assertions, plaintiff argued that the only issue that needed to be resolved by the psychologist was to advise on parenting time, as the parties agreed to have joint legal custody. Plaintiff asserted that defendant's continued failure to respond to the drafted MSA supported a finding that defendant's actions were in bad faith. In further support of his application, plaintiff attached a certification of services from his counsel. Neither plaintiff's nor his counsel's certifications identified any issue about plaintiff's counsel fee being excessive.

A week after plaintiff filed his opposing papers, defense counsel revised the proposed MSA and sent it to plaintiff's counsel. Two days later, he filed defendant's certification in further support of her pending application and in opposition to plaintiff's cross motion. In her certification, defendant challenged the plaintiff's statements made in his papers and explained that any delay in addressing the MSA was due to her and her counsel being "under the impression that there was no urgency in drafting the [MSA], because [they] were under the mistaken impression that the [c]ourt would not bifurcate the issue of child custody from the economics of [this] matter." She further asserted that the delay was also caused by plaintiff's failure to make the required payments, which she needed in order to retain the psychologist. According to defendant, she had no

7

"firsthand knowledge" of the conversations the parties' counsel had with each other but noted that plaintiff's statements were contradicted by her counsel's time sheet.

On December 2, 2018, plaintiff and his counsel again revised the proposed MSA and forwarded it to defendant and her counsel. The next day, the parties appeared before the Family Part judge for their final hearing.

At the hearing, before the parties testified, the judge informed plaintiff that because he failed to pay the $84,000 he still owed under the Agreement, he was "in violation of an [A]greement that [he was] not done with yet. So [plaintiff thought] getting divorced [that day] end[ed] it . . . [but the judge was] not so sure it [did]." The judge further stated that plaintiff did have the "opportunity to make this right. [Plaintiff] signed an agreement which [the judge] anticipated [plaintiff] would be bound to. And if plaintiff [thought] that this court [was] a joke, . . . [he would] have [an] opportunity to spend some time with [the court]. Unless [his counsel] convince[d the judge] otherwise." Plaintiff then handed the check for the amount owed to his counsel. The parties then testified to their acceptance of the terms of the Agreement, which they both had signed and included that plaintiff was required to pay defendant $104,000,

that the parties were able to negotiate the terms in the Agreement, they understood the terms of the Agreement, and they agreed to be bound by its terms.

Afterwards, the judge asked plaintiff why he should not impose sanctions against him. Plaintiff's counsel responded by again justifying plaintiff's actions by relying upon defense counsel's failure to address the MSA in a timely fashion. Plaintiff's counsel explained that plaintiff was not acting in bad faith but instead was just being extremely cautious as the matter kept getting dragged on. With that, plaintiff believed that counsel fees should not be awarded to defendant, especially since the Agreement stated that each party would be responsible for their own counsel fees.

Defense counsel argued that "nowhere in [the Agreement did] it condition compliance on anything else happening. Nowhere [did] it say that . . . plaintiff will pay $104,000 upon execution of a subsequent written agreement. It doesn't say that anywhere." Further, defense counsel admitted that he did not review the drafted MSA immediately, but explained that his lack of immediate review was because the parties "were still months away from resolving the custody and parenting time issues[, as the psychologist had not] even issued his report yet." To counsel's understanding, the case was going to be bifurcated between the divorce and custody issues, and after this was decided, counsel asked plaintiff

to send over a word format of the drafted MSA, in which he had to essentially rewrite. He then explained that although the parties agreed to many of the terms, plaintiff's counsel then sent a new revision the day before this hearing which revised aspects that were already agreed upon. Since the proposed MSA could not be agreed upon, the parties had to go back to the Agreement, as defendant was in need of the remaining amount due.

The judge indicated that he never agreed to bifurcate the matter and there had to be some parenting time in place in the interim before the FJOD was entered. The parties then agreed to an interim parenting schedule that would be in place until the psychologist had conducted his best interest analysis, and if they could not agree to follow the recommendations in the report, they could come back to court. The judge then entered the FJOD, incorporating the Agreement.

After the judgment was entered, the judge informed defense counsel that he could "submit a certification of [his] services . . . that says, why [he thought he] should get those fees, given all of the circumstances that were just laid out on the record" by December 14, 2018. Plaintiff's counsel was given a week to respond.

Both parties filed certifications. In defense counsel's certification he set forth information about the fees and costs expended as required by Rule 4:42-9(b) and the Rules of Professional Conduct (RPC) 1.5, and itemized defendant's position as to each of the factors under Rule 5:3-5(c). He argued that these rules warranted an award of counsel fees to defendant in the amount of $14,350.85, which was incurred in attempt to enforce the Agreement during the period from October 1, 2018 to December 4, 2018.

In his opposing certification, plaintiff's counsel stated that defense "[c]ounsel ha[d] proven to be an inaccurate historian of the facts surrounding this case." He stated that from the "signing of the [Agreement] on September 14, 2018 until the uncontested hearing on December 3, 2018 [there had been] confusion regarding the obligations of the parties." Plaintiff reiterated the lack of communication on defendant's end in relation to drafting an MSA. Further, he stated that the fees for the appearances from November 30, 2018 and December 3, 2018 related to "finalizing the negotiations for the ultimate resolution of this matter," rather than for the application for counsel fees. Last, he stated that this could have all been avoided if "[d]efendant had simply taken [the] time and negotiated a settlement." Notably, plaintiff's counsel did not

argue that the time expended by defense counsel was excessive, other than it would have been better focused upon settlement rather than enforcement.

On March 28, 2019, the judge entered the order awarding fees, which included his written decision. The judge reviewed all of the factors under Rule 5:3-5(c) and he found that plaintiff had the ability to pay his own fees, but defendant did not. He further determined that plaintiff acted in "bad faith by failing to pay . . . [d]efendant as part of the" Agreement. The judge found plaintiff's argument that the full $104,000 was only payable to defendant upon the signing of an MSA as unsupported by the record. He specifically stated that the execution of a final MSA was not a condition precedent and the Agreement "would have been sufficient for the parties to be divorced . . . and to submit a[n MSA] after-the-fact." By failing to adhere to the Agreement and allowing defendant to incur significant legal fees in attempt to get the delinquent payment, it allowed the judge to grant defendant counsel fees in the amount of $14,350.85. This appeal followed.

On appeal, plaintiff argues that the judge's conclusion that he "acted in bad faith by not paying the monies referenced in the [Agreement], and that the fees requested were reasonable," were without merit and an abuse of the judge's discretion. He contends that the judge's finding was contrary to the evidence,

as the judge had continuously stated that both parties were at fault for not following the Agreement. Plaintiff asserts that he only promised to pay defendant $104,000 so long as a reasonable parenting-time schedule was made. Since defense counsel failed to draft the MSA, failed to acknowledge the one that plaintiff's counsel drafted in a reasonable time, and defendant failed to speedily retain the psychologist, he argues that the judge's decision was incorrect. In the alternative, plaintiff asserts that the fees requested by defense counsel were excessive because the hours expended by defense counsel exceeded what was necessary to secure his performance. We disagree.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998); Gnall v. Gnall, 222 N.J. 414, 428 (2015). This court accords deference to the family courts due to their "special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413. The family court's findings are binding so long as its determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12. We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. of Am., 65 N.J. 474, 484 (1974)).

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere to 'ensure that there is not a denial of justice.'" Gnall, 222 N.J. at 428 (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Where the issue before us relates to a trial judge's award of counsel fees, we "will disturb [the judge's] determination on counsel fees only on the 'rarest occasions, and then only because of a clear abuse of discretion.'" J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). In determining whether to award fees, a trial judge must determine the reasonableness of the fees sought based on information required by Rule 4:42-9(b), which incorporates RPC 1.5, and, in family matters, a party's entitlement to fees after considering the factors listed in Rule 5:3-5(c). Id. at 493. A judge "shall consider the factors set forth in [Rule 5:3-5(c)], the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A. 2A:34-23.

Among the factors under Rule 5:3-5(c) is "the reasonableness and good faith of the positions advanced by the parties both during and prior to trial." J.E.V., 426 N.J. at 493 (quoting R. 5:3-5(c)(3)). Where one party pursues a position in bad faith, the judge may award reasonable counsel's fees to the other

irrespective of the parties' relative economic health "because the purpose of the award is to protect the innocent party from unnecessary costs and to punish the guilty party." Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000). Fees can be awarded or denied where otherwise appropriate based upon bad faith. See J.E.V., 426 N.J. Super. at 493 ("[T]he party requesting the fee award must be in financial need and the party paying the fees must have the financial ability to pay, and if those two factors have been established, the party requesting the fees must have acted in good faith in the litigation.").

Bad faith "generally impl[ies] or involv[es] actual or constructive fraud or a design to mislead or deceive another or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Kelly v. Kelly, 262 N.J. Super. 303, 308 (Ch. Div. 1992) (quoting Bad Faith, Black's Law Dictionary (4th ed. 1968)); see also Borzillo v. Borzillo, 259 N.J. Super. 286, 293 (Ch. Div. 1992) (explaining that bad faith includes, among other things, "[t]he intentional noncompliance with a voluntary agreement" and "[t]he misuse or abuse of process to evade court-ordered obligations or obligations arising out of voluntary agreement").

Applying these guiding principles here, we discern no reason to disturb the Family Part judge's award of fees to defendant. As the judge found, plaintiff's obligation to make the equitable distribution and child support payments under the Agreement were not contingent on anything, a fact that plaintiff obviously understood when he partially performed the Agreement by making the initial $10,000 payment to defendant. See Duff v. Trenton Beverage Co., 4 N.J. 595, 604 (1950) (explaining that a condition precedent will apply only if that was "[t]he intention of the parties"); see also Liberty Mut. Ins. v. President Container, Inc., 297 N.J. Super. 24, 34 (App. Div. 1997) (explaining that since condition precedents are disfavored, the creation of a condition precedent has to be clearly expressed in the agreement for it to be applied); Wanaque Borough Sewerage Auth. v. Township of West Milford, 144 N.J. 564, 574 (1996) ("Courts often find and enforce implied promises by interpretation of a promisor's word and conduct in light of the surrounding circumstances.").

Other than an unrelated delay in defense counsel drafting or reviewing the proposed MSA, plaintiff does not cite to any evidence that defendant acted in bad faith by breaching the parties' express agreement. See Kelly, 262 N.J. Super. at 308; Borzillo, 259 N.J. Super. 293-94. Moreover, to the extent plaintiff relies upon defendant's failure to retain the agreed upon psychologist, his

argument is belied by the Agreement's express terms that fixed a date for the payments he was obligated to make, and left to the future, without any deadline, the retention of the expert and the issuing of his report.

Additionally, contrary to plaintiff's contention, there was no evidence that the judge abused his discretion by finding the fees he awarded were reasonable. To the extent that plaintiff raises on appeal for the first time specific time entries from defense counsel's time sheets to support his contention, we need not consider his argument as it was not raised before the trial judge. See Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973); Correa v. Grossi, 458 N.J. Super. 571, 576 n.2 (App. Div. 2019).

Finally, we find plaintiff's remaining contention about the award violating his Eighth Amendment rights to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3851-18T1