**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2331-18T2

PAUL ROSENBERG,

    Plaintiff-Appellant,

v.

REESA ROSENBERG,

    Defendant-Respondent.

_____

          Argued November 21, 2019 – Decided December 23, 2019

          Before Judges Alvarez and Suter.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-0463-11.

          Mark J. Molz argued the cause for appellant.

          Respondent has not filed a brief.

PER CURIAM

Plaintiff Paul Rosenberg appeals the December 20, 2018[1] Family Part order, requiring him to repay accumulated alimony arrears by making a $5000 lump sum payment and paying $100 per week thereafter in addition to his weekly alimony amount.[2] We affirm.

Plaintiff and defendant Reesa Rosenberg divorced in May 2012. They have one son, who was born in 1997. Their property settlement agreement (PSA) was negotiated over a two-year period and incorporated into their Dual Final Judgment of Divorce (FJOD).

Under the PSA, plaintiff is the parent of primary residence for their son. Defendant is required to pay child support to plaintiff of $111 per week. This was calculated based on income to defendant derived entirely from alimony paid by plaintiff of $350 per week. Defendant also received Supplemental Security Income (SSI), because she became disabled during the marriage, but that income was not used to calculate child support. Defendant was not credited with any overnight parenting time. Plaintiff's income was fixed at $80,000 per year to

[1] The order was dated December 20, 2018, not December 28, 2018, as listed in the Notice of Appeal.

[2] Defendant did not file an answering brief. We entered an order of suppression on August 6, 2019.

A-2331-18T2

determine child support. He was credited with the cost of providing health insurance for their son in the amount of $100 per week.

Under the PSA, plaintiff agreed to pay defendant alimony of $350 per week for eight years. His alimony obligation would terminate "upon the death of the payor or death of the payee, or upon the remarriage of the payee." If plaintiff were declared disabled and unable to maintain employment, the PSA provided that he could file an appropriate application and "this shall be an exception to the bar against modification . . . ."

They agreed to an anti-Lepis provision.[3] The PSA provided:

> no Court shall have jurisdiction or power to modify this provision for the eight (8) year term. The parties have considered any and all foreseeable events and have also considered that there may be unforeseeable events occurring to either of them. Each has specifically considered increases or decreases in the cost of living, increases or decreases in their income, the possible loss of or inability to secure employment, prospective changes of employment by either of them, the subsequent acquisition or loss of assets by either of them, the dissipation (whether negligently[,] purposely, accidentally, or by any other circumstances) of the assets received by each of them as and for equitable distribution in this matter, and any other event which may or which does change the quality of economic life.

---

[3] Lepis v. Lepis, 83 N.J. 139 (1980).

In August 2018, plaintiff filed a motion seeking to terminate alimony.[4] He alleged he should no longer be required to pay alimony because defendant was cohabitating with another man. He also alleged a change in circumstances, claiming defendant was "double[-]dipping" her social security and concealing her alimony payments. Plaintiff's motion requested recalculation of child support because their son was a full-time college student. It also included a request for attorney's fees.

Plaintiff's supporting certification alleged "[a]fter the divorce" he "became aware" from his cousin that his former wife was cohabitating with a man. He claimed his son and his son's girlfriend told him defendant was romantically involved. Plaintiff attached three uncertified letters with his certification—only one that was dated—alleging defendant was involved in a relationship for two years. One of the letters was from the parties' son. In plaintiff's reply certification, he claimed defendant had been living with a man for "at least three years," based on information from their son. Plaintiff

---

[4] The motion was submitted initially as a cross-motion to defendant's motion requesting that all alimony payments, including arrears, be placed directly in a special needs trust, but plaintiff's motion was not accepted for filing. As a result, defendant's motion was treated as unopposed and plaintiff's motion was listed for another return date.

requested discovery to determine what "economic contribution" this person was making to defendant.

Plaintiff alleged defendant was receiving SSI of $781.25 per month, which was more than what was disclosed to him in the divorce. He claimed only a portion of the alimony he was paying was being acknowledged by the special needs trust. He alleged these facts were a change in circumstances warranting termination of alimony.

Plaintiff certified their son was attending a local university and living with plaintiff. He was paying for the son's car and car insurance. Defendant was in arrears in paying child support. Plaintiff claimed he was earning $72,000 per year with no overtime and no benefits, which was a reduction from what he was earning when they divorced, and he now had to pay for health insurance.

Defendant certified her SSI benefits were $494 per month, not $781.25 as plaintiff alleged, but payment had stopped because plaintiff would not agree to the special needs trust. She alleged the limited duration alimony was the product of negotiation because she initially claimed entitlement to permanent alimony, but "significantly compromised [her] position." The anti-Lepis provision was the consideration for her agreement to limited duration alimony.

A-2331-18T2

Defendant's cross-motion requested enforcement of the PSA because plaintiff's alimony arrears were over $23,000 at that time and "alimony is the only money I have to live on." She acknowledged that if she had child support arrears, it was "directly related to the [p]laintiff's failure to pay [alimony]." Defendant requested an award of counsel fees, alleging plaintiff's motion showed a lack of good faith. She requested a lump sum payment on the alimony arears and counsel fees.

In denying plaintiff's motion on November 2, 2018, the court found the anti-Lepis provision and the alimony provisions were "specifically bargained-for in exchange for [defendant] surrendering her right to permanent (open durational) alimony." The anti-Lepis provision was "an integral and essential part of the parties' bargain." The court found the parties entered into the PSA "with full knowledge of all present and reasonable foreseeable future circumstances," which included "the possibility that the defendant might cohabitate with another person." In the PSA, the parties "waived all additional rights to discovery." The court found the PSA was "clear and unambiguous," barring the relief sought by plaintiff in his motion. His request to terminate alimony based on cohabitation or other changed circumstances was prohibited by the anti-Lepis provision of the PSA. In addition, the court found plaintiff's

6

proofs did not establish "either cohabitation or any basis for further proceedings . . . ." The allegations were based on "unsworn, conclusory out-of-court statements made by third parties . . . ."

The trial court denied without prejudice plaintiff's request to recalculate child support based on a lack of changed circumstances. Under the PSA, child support was based on plaintiff's income being fixed at $80,000, but the proofs submitted with the motion showed he was on track to earn more than that. Plaintiff did not submit a Case Information Statement (CIS) as required by Rule 5:5-2.

The trial court denied plaintiff's request for counsel fees, but deferred decision, pending submission of a current CIS from plaintiff and his CIS from the divorce, about repayment of the alimony arrears. Plaintiff was ordered to continue to pay $350 per week in alimony per the PSA.

The court awarded $2500 in counsel fees to defendant because plaintiff "acted in bad faith." His motion to terminate alimony was made "without factual or legal basis." Plaintiff's allegations about his income were "contradictory." The court found plaintiff was "in a far superior financial position" when compared to defendant. In addition, "[d]efendant's . . . counsel fees [we]re reasonable but should not have been incurred."

The court entered a supplemental order on December 20, 2018, requiring plaintiff to make a $5000 lump sum payment on the alimony arrears that were then $23,332.16. Plaintiff was ordered to pay an additional $100 per week toward the arears, which was in addition to his weekly $350 alimony payment.

On appeal, plaintiff argues the court erred by ordering him to pay alimony arrears. He claims there were issues of fact about the parties' ability to pay their support obligations. He did not know defendant was cohabitating with another man "when he entered the PSA." He claims he is paying his son's college and other expenses and that he was "duped in the PSA."

Plaintiff argues the court should have allowed a period for discovery and conducted a plenary hearing. Although the PSA included an anti-Lepis provision, he argues he could not foresee she might cohabit with another man. He agreed to the anti-Lepis provision because of his wife's' disability. Plaintiff claims the PSA lacked a "meeting of the minds."

Plaintiff contends the trial court erred by awarding attorneys' fees to defendant on grounds that he had acted in bad faith. He sought to terminate alimony because he thought he had been lied to when he entered into the PSA.

A-2331-18T2

## II.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Although plaintiff argues the PSA should not be enforced, there is a "'strong public policy favoring stability of arrangements' in matrimonial matters." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citations omitted) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). Marital settlement agreements "which are fair and just" are enforceable in equity. Petersen v. Petersen, 85 N.J. 638, 642 (1981) (providing that settlement agreements in matrimonial matters are "entitled to considerable weight with respect to their validity and enforceability" in equity, provided they are "fair and just").

9

A court has the authority to modify or alter support orders "from time to time as circumstances may require." N.J.S.A. 2A:34-23. A support order may be subject to review and modification when a party has made a showing of "changed circumstances." Lepis, 83 N.J. at 146 (citations omitted); Miller v. Miller, 160 N.J. 408, 419 (1999).

Parties can waive modification of alimony by including an anti-Lepis clause in their agreements. See Morris v. Morris, 263 N.J. Super. 237, 240 (App. Div. 1993). Parties incorporating an anti-Lepis clause must do so "with full knowledge of all present and reasonably foreseeable future circumstances" and "bargain for a fixed payment or establish the criteria for payment to the dependent spouse, irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Id. at 241.

We agree the trial court did not abuse its discretion by denying plaintiff's motion to terminate his alimony obligation. The parties' PSA had an anti-Lepis provision that prohibited modification except for the death of one of the parties or defendant's remarriage. None of the grounds listed in the PSA were triggered; the parties were not deceased, and defendant had not remarried.[5] Defendant's

---

[5] Plaintiff alleged on appeal that he was diagnosed with an illness. This was not in the record before the trial court.

A-2331-18T2

cohabitation with another man was not one of the grounds in the PSA to modify alimony. As such, we agree with the trial court that the PSA's anti-Lepis provision precluded the requested modification.

Plaintiff's claim on appeal that he was unaware defendant was cohabitating with a man when he agreed to the PSA, was not supported by the record. Plaintiff's evidence of defendant's cohabitation was based on unsworn letters from non-parties. Although the letters alleged defendant had been living with a man for two years, they were submitted six years after the PSA was entered into and made no claim relating to the timeframe of the divorce. Plaintiff's reply certification from October 2018, asserted defendant was living with a man for at least three years, but that statement was based on information his son gave him. None of these proofs established plaintiff's claim in his motion that defendant was cohabitating with another person or his claim on appeal that she was residing with someone else when he agreed to the PSA.

We discern no abuse of discretion by the court in ordering plaintiff to repay the alimony arrears or in the manner of repayment. By the time the court ordered repayment, the arrears were over $23,000; defendant had been without alimony income for more than sixty weeks. The proof plaintiff submitted with his CIS showed that his income was on track to exceed what he earned when the

PSA was entered. The expenses in the CIS reflected $1050 in "savings/investment" monthly, supporting the trial court's order that plaintiff was able to repay the arrears at the rate of $100 per week.

Plaintiff requested a modification of child support because he claimed their son was a full-time college student, he paid for his car and car insurance and also had to pay for health insurance. The trial court appropriately denied this request. The CIS plaintiff submitted in 2018 did not include any educational expenses for the son. It also did not show a decrease in plaintiff's income. When child support was calculated for the PSA, it included health insurance for the child. We are satisfied there was no change in circumstances to warrant a modification of child support. Lepis, 83 N.J. at 157-58.

Plaintiff alleges the trial court erred by awarding defendant attorney's fees based on bad faith. We are satisfied based on our review of the record, there was no abuse of discretion in the award of fees.

"Rule 4:42-9(a)(1) authorizes the award of counsel fees in a family action on a final determination pursuant to [Rule] 5:3-5(c)." Gotlib v. Gotlib, 399 N.J. Super. 295, 314 (App. Div. 2008). A court in its discretion, may award counsel fees and costs to either party in a matrimonial action. Williams v. Williams, 59 N.J. 229, 233 (1971). A court must consider whether the:

party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

[Mani v. Mani, 183 N.J. 70, 94-95 (2005) (citing Williams, 59 N.J. at 233).]

A court may award fees to "prevent a maliciously motivated party from inflicting economic damage" on the other party by compelling that party to incur greater counsel fees. Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992). Bad faith occurs when a party seeks "relief which one knows or should know that no reasonable argument could be advanced in fact or law in support thereof[.]" Borzillo v. Borzillo, 259 N.J. Super. 286, 293-94 (Ch. Div. 1992).

The trial court found plaintiff's motion to terminate alimony was "without factual or legal basis," not only because plaintiff's proofs did not support his claim of cohabitation or changed circumstances, but because the PSA's anti-Lepis provision did not include cohabitation as a basis to terminate alimony. The trial court also found the attorney's fees were reasonable; defendant's counsel charged a flat fee of $2500.[6] The trial court considered the financial

---

[6] Counsel's certification stated that defendant would have been charged in excess of $3200 if her standard rate of $305 per hour had been charged.

circumstances of the parties. Plaintiff was "on pace to earn $99,000 in 2018" while defendant received $494 in SSI, placing plaintiff in a "far superior financial position" compared to defendant. We find no misapplication of the trial court's discretion in its analysis or award of attorney's fees to defendant.

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiff's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2331-18T2